J. A29007/16

2016 PA Super 279

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
TIANT RASHAAD MITCHELL, :
:
Appellant : No. 633 WDA 2015

Appeal from the Judgment of Sentence November 3, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0015446-2012

BEFORE: DUBOW, J., MOULTON, J., and MUSMANNO, J.

OPINION BY DUBOW, J.:                    **FILED DECEMBER 8, 2016**

Appellant, Tiant Rashaad Mitchell, appeals from the Judgment of

Sentence entered in the Allegheny County Court of Common Pleas following

his jury trial convictions for Attempted Murder and related offenses. After

careful review, we affirm.

The underlying facts, as summarized in the trial court's 1925(a)

Opinion, are as follows:

> In the late evening hours of October 11, 2012, Wanda Moore
> drove her daughter, Shawnece Moore, and Appellant (Shawnece
> Moore's husband) to a bar in the South Side section of the City
> of Pittsburgh. Wanda Moore returned to the bar approximately
> one hour later with her husband Gary Evans, to pick up
> Shawnece and Appellant. Evans and Wanda Moore entered the
> bar to have a drink with Appellant and Shawnece. When another
> man in the bar bought the group a round of drinks, Appellant
> became angry because he thought the man was "trying to talk
> to" Shawnece. Nonetheless, the group left the bar without
> incident at 2:00 A.M., and Wanda Moore drove Evans,
> Shawnece, and Appellant to her home in the Garfield
> neighborhood of the city.

When they arrived at Wanda Moore's home, Appellant was still agitated about the man who purchased the round of drinks at the bar, and he stated that he was "going to do things." The group continued to drink, and Appellant began to argue with Wanda Moore and Evans. Wanda Moore repeatedly told Appellant not to talk like that in her house, and as a result of Appellant's agitated and confrontational state, Evans drove Appellant and Shawnece to their home on Millerdale Street, in the adjacent Stanton Heights neighborhood.

Shawnece's four children were asleep at home when she and Appellant arrived: her three older children were upstairs, and her one-year old daughter was downstairs. Once inside the home, Appellant pointed a gun at Shawnece, calling her names and threatening her. Appellant was drunk and belligerent, and he also pointed the gun at Shawnece's one[-]year[-]old daughter, and called her names. Appellant started to scream louder, and Shawnece began yelling at Appellant about him having a gun. Shawnece's eighteen[-]year-old son Jamil awoke during that commotion, and called down from the top of the staircase to determine if his mother was okay. Appellant told Jamil to go back to bed, but Jamil waited until his mother said she was okay before he returned to his room. Concerned about Appellant having a gun, Jamil locked his bedroom door and barricaded himself against it.

Shortly thereafter Appellant went upstairs and attempted to open Jamil's door but he could not gain entry to the bedroom. Appellant cocked the gun outside Jamil's bedroom door. Shawnece came upstairs and was able to persuade Appellant to leave the home by offering to buy him cigarettes. They left the home and as they were walking together near the 900 block of Millerdale Street, Appellant fired the gun into the air three times. Appellant told Shawnece that he wanted to die, and that he would shoot at the police officers when they arrived so that they would shoot back and kill him. In fact, a resident of Millerdale Street had heard the shots and called 911 to report the shots fired, and dispatch alerted officers to that call.

Several Pittsburgh police officers, including Officer Andrew Baker, responded to the dispatch at 5:00 A.M. The dispatch included information that three shots were fired by a black male in a white sweatshirt on Millerdale Street. As Officer Baker approached Millerdale Street from Schenley Manor Drive, he

observed Appellant, in a white sweatshirt, walking in the middle of the street with Shawnece.  Officer Baker stopped his marked patrol vehicle, opened his door, and Appellant immediately pulled a gun out of his waistband and began to shoot at Officer Baker.  Officer Baker was able to get out of his vehicle and return fire.  Officer Baker moved to the back of his vehicle for better cover and to radio for backup.  Appellant ran across the front of the patrol vehicle and continued to shoot at Officer Baker, and Officer Baker again returned fire.  Appellant stopped shooting when he fell into a ditch.  He raised his hands yelling "I'm done, I'm done.  I'm shot, I'm shot."

Appellant's gunfire struck Officer Baker in the center area of his chest, creating a hole in his exterior shirt and an indentation in his bulletproof vest.  Appellant's gunfire also struck Officer Baker's vehicle four times.  Officer Baker's return fire struck Appellant in the ankle and buttocks.  During the exchange of gunfire Shawnece ran into the yard of a nearby home, and she was struck in the hand by a ricochet bullet fragment.

Backup officers arrived on scene within one minute of Officer Baker's call for backup, and Appellant was taken into custody.  A 9mm firearm was recovered twenty feet from where Appellant was arrested.

\*    \*    \*

On August 6-7, 2014, Appellant proceeded to a jury trial.  The jury found Appellant guilty of criminal attempt (homicide), assault of a law enforcement officer, aggravated assault, carrying a firearm without a license, endangering welfare of children, simple assault, and three counts of recklessly endangering another person, and not guilty of one count of simple assault.  On November 3, 2014, Appellant was sentenced by the trial court to an aggregate sentence of thirty to sixty years' incarceration.  On November 12, 2014, Appellant filed a post[-]sentence motion, which was denied by operation of law on March 18, 2015.

Trial Court Opinion, filed 1/14/16, at 3-8 (footnotes and citations omitted).

Appellant filed a Notice of Appeal on April 17, 2015.  Both

Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents one issue for our review:

Is [Appellant] entitled to a new trial in order to remedy the violation of his federal and state constitutional rights to confrontation, cross-examination, and due process that occurred where the Commonwealth was permitted to present as substantive evidence the preliminary hearing testimony of a prosecution witness who willfully failed to appear for trial and where the opportunity for full and fair cross[-]examination did not and necessarily could not have existed?

Appellant's Brief at 6.

Insofar as Appellant's constitutional challenge raises a question of law, our standard of review over the trial court's admission of the contested testimony is *de novo* and our scope of review is plenary. ***Commonwealth v. Yohe***, 39 A.3d 381, 384 (Pa. Super. 2012).

"Our Supreme Court has made clear that the admission at trial of previously [recorded] testimony depends upon conformity with applicable evidentiary rules and the defendant's constitutional right to confront witnesses against him." ***Commonwealth v. Leak***, 22 A.3d 1036, 1043-44 (Pa. Super. 2011). ***See also Commonwealth v. Rizzo***, 726 A.2d 378, 380 n.2 (Pa. 1999) ("Pennsylvania law permits the admission of prior recorded testimony from a preliminary hearing as an exception to the hearsay rule when the witness is unavailable, the defendant had counsel, and the defendant had a full and fair opportunity for cross-examination at the preliminary hearing."); Pa.R.E. 804(b)(1).

"Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a

prior opportunity for cross-examination." **Commonwealth v. Allshouse**, 36 A.3d 163, 171 (Pa. 2012) (citing **Crawford v. Washington**, 541 U.S. 36, 68 (2004)). "Whether prior testimony was given at trial or at any other proceeding, where, as here, admission of that prior testimony is being sought as substantive evidence against the accused, we conclude that the standard to be applied is that of *full and fair opportunity* to cross-examine." **Commonwealth v. Bazemore**, 614 A.2d 684, 687 (Pa. 1992) (emphasis in original).

"The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial." **Leak**, *supra* at 1045 (citation omitted).

The trial court addressed this issue as follows:

Here, the parties agreed that Shawnece Moore was unavailable pursuant to Pennsylvania Rule of Evidence 804, as she could no longer be located. Though agreeing that Shawnece was unavailable, Appellant argues that the testimony was inadmissible because credibility and character were not at issue at the preliminary hearing. However, otherwise admissible preliminary hearing testimony will not be excluded merely because defense counsel did not cross-examine the witness as extensively at the preliminary hearing as he might have done at trial, provided he had t[he] opportunity to do so and was not denied access to vital impeachment evidence. **Commonwealth v. Johnson**, 758 A.2d 166, 169 (Pa. Super. 2000). At the preliminary hearing, defense counsel extensively cross-examined Shawnece Moore, including the accuracy and credibility of her perceptions that evening given her consumption of alcohol. Appellant had a full and fair opportunity to cross-examine

Shawnece at the preliminary hearing. Further, there is no allegation or evidence that the Commonwealth withheld impeachment evidence, or that the defense attorney at the preliminary hearing was not permitted to cross-examine Shawnece Moore as to her credibility or character. As such, the [t]rial [c]ourt properly admitted the preliminary hearing testimony of Shawnece Moore.

Appellant's claim is without merit.

Trial Court Opinion at 16-17 (citations omitted).

We agree with the trial court's analysis and conclusion. Appellant had a full and fair opportunity to cross-examine the witness, but declined to do so. Appellant does not allege that the Commonwealth withheld any statements, criminal record history, or any other concerning factors relevant under the case law. Accordingly, Appellant's claim merits no relief and we affirm Appellant's Judgment of Sentence.[1]

---

[1] While the outcome of the case is clear under our binding precedent, we must highlight the potential unfairness to defendants in circumstances such as this, where a court admits preliminary hearing testimony from an unavailable witness as substantive evidence without the benefit of full cross-examination. On the one hand, this Court has narrowed the rights of defendants at preliminary hearings over time. *See*, *e.g.*, *Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015) (holding that "an accused does not have the right to confront the witnesses against him at his preliminary hearing" and "[Pa.R.Crim.P. 542(E)] does allow hearsay evidence alone to establish a *prima facie* case"), *appeal granted*, 135 A.3d 175 (Pa. 2016); *Commonwealth v. Landis*, 48 A.3d 432, 448 (Pa. Super. 2012) (holding that "it is inappropriate for the trial court to make credibility determinations in deciding whether the Commonwealth established a *prima facie* case."); Pa.R.E. 101, Comment ("Traditionally, our courts have not applied the law of evidence in its full rigor in proceedings such as preliminary hearings…"); Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 101.02 *et seq*. (2016 ed. LexisNexis Matthew Bender). On the other hand, we have continued to raise the stakes and importance of a defendant's cross-

J. A29007/16

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2016

---

examination opportunities at the preliminary hearing in cases such as Appellant's. **See also Leak**, **supra**. Given the increasing importance and vitality of **Crawford**, we encourage our Supreme Court, the Criminal Procedural Rules Committee, the Committee on the Rules of Evidence, and our Pennsylvania General Assembly to consider carefully the adequacy of our evidentiary rules and case law governing the conduct of preliminary hearings in light of this growing tension with the Confrontation Clause under both the federal and state constitutions.