**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEANDER WILLIAMS | |
| Appellant | No. 390 EDA 2016 |

Appeal from the PCRA Order January 29, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012621-2007

BEFORE: MOULTON, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.: **FILED JUNE 14, 2017**

Leander Williams appeals from the January 29, 2016 order entered in the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

This Court, in deciding Williams' direct appeal, set forth a detailed factual history:

> On the evening of June 13, 2004, eyewitness Reginald [Stephon] Foster was walking in the vicinity of 39th and Market Street in Philadelphia when he saw [Williams] and others engaged in a game of dice. N.T. 3/16/09 at 79-80. Foster knew [Williams], as [Williams'] mother was also the mother of Foster's 25 year-old daughter, and, as a result, Foster had known [Williams] for nearly all of [Williams'] life. N.T. at 80. Foster explained that he was walking

---

[*] Former Justice specially assigned to the Superior Court.

through the neighborhood to purchase crack cocaine from his usual hangout at townhouses located at 40th and Market. N.T. at 81. The man who sells him the crack cocaine, a man called "Twin," however, was playing in the dice game, so Foster waited until Twin came over to make his purchase. N.T. at 100-101.

Afterward, Foster remained in the location briefly to talk to several neighbors who had called hello to him. N.T. at 103. As he was readying to leave, he noticed that the dice game was getting louder and, according to him, "nasty, because the boy [the victim, Austin] whom I don't know his name, but I seen him before, he was apparently winning a lot of money. . . . He had money in his hand. He had what they call a knot. He was winning. He was winning." N.T. at 82, 83. Foster confirmed that this young man was the eventual homicide victim. N.T. at 82-83. Foster continued that as he was walking he turned around again and saw [Williams] whisper something to a man named Shawn, grab the victim by the shirt, and shoot the victim in the back several times. N.T. at 83-87. Foster said he immediately dropped to the ground and watched [Williams] and a man known as "Twin," who had just sold crack to Foster, take the victim's money and run. N.T. at 85-87. Foster denied being under the influence of drugs or alcohol at the time. N.T. at 87.

Valene Mouzone was seven months pregnant with Austin's daughter on the day he was killed. She testified that Austin had telephoned her just minutes before the shooting and told her to get ready because he was taking her out for pizza. N.T. at 165-66. Minutes later, Mouzone said she heard gunshots outside. N.T.. at 166. She went outside after the gunshots ceased and eventually saw [Williams] standing with two other men among the chaotic scene. N.T. at 168, 211-213. Mouzone was looking for her little sister and cousin when she heard others screaming while surrounding someone on the ground. N.T. at 168. When the circle of people opened, Mouzone saw Austin lying on the ground. N.T. at 168-69.

Mouzone testified that she saw [Williams] on two occasions after that. The first time was when she was on her way to the local school to pick up her little cousin. She turned the corner from her home and encountered

[Williams] and another man. N.T. at 171. [Williams] said "What's up" to Mouzone as she passed and she told him not to speak to her because he had killed the father of her baby. According to Mouzone, [Williams] replied that he killed Austin was "bad blood." N.T. at 171, 177. After Mouzone returned home from the school with her cousin, she phoned authorities to tell them what [Williams] had just said. N.T. at 179, 195. Mouzone subsequently gave a statement to authorities to this effect. N.T. at 200-205.

*Commonwealth v. Williams*, No. 1260 EDA 2011, unpublished mem. at 1-4 (Pa.Super. filed Jul. 20, 2012) (alterations in original).

On March 20, 2009, a jury convicted Williams of first-degree murder, robbery, conspiracy, carrying a firearm without a license, and possession of an instrument of crime.[1] On June 3, 2009, the trial court sentenced Williams to life incarceration without parole for the first-degree murder conviction and a consecutive 10 to 20 years' incarceration for the robbery conviction; the trial court imposed no further penalty on the remaining convictions. Williams did not file a direct appeal.

On April 29, 2011, following PCRA proceedings, the trial court reinstated Williams' direct appeal rights *nunc pro tunc*. On May 6, 2011, Williams timely filed a notice of appeal. On July 20, 2012, this Court affirmed the judgment of sentence. Williams filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on April 30, 2013.

---

[1] 18 Pa.C.S. §§ 2502(a), 3701(a)(1), 903(a), 6105(a)(1), and 907(a), respectively.

- 3 -

Williams, acting *pro se*, filed the instant timely PCRA petition[2] on February 27, 2014. The PCRA court[3] appointed counsel, who filed an amended PCRA petition on February 1, 2015. On October 9, 2015, the Commonwealth filed a motion to dismiss the petition; Williams filed a response to this motion on November 1, 2015. On December 23, 2015, the PCRA court issued a notice of intent to dismiss the petition under Pennsylvania Rule of Criminal Procedure 907, and subsequently dismissed the petition on January 29, 2016. That same day, Williams timely filed a notice of appeal.

Williams raises three issues on appeal:

1. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to object to the Commonwealth's use at trial of the former testimony of witness [Reginald] Stephon Foster on the grounds that [Williams] did not have a full and fair opportunity to cross-examine him?

---

[2] Because Williams' appeal rights were reinstated *nunc pro tunc* through his first PCRA petition, his subsequent PCRA petition is considered his first for timeliness purposes, measured from the date when his judgment of sentence became final following the *nunc pro tunc* appeal. **See Commonwealth v. Callahan**, 101 A.3d 118, 121-22 (Pa.Super. 2014). Williams' judgment of sentence became final on July 29, 2013, when his time to seek review in the United States Supreme Court expired. **See** U.S. S.Ct. R. 13 (providing petitioners 90 days from denial of relief to file petition for writ of *certiorari* with the United States Supreme Court). Thus, Williams' petition, filed February 27, 2014, is timely. **See** 42 Pa.C.S. § 9545(b)(1).

[3] The judge who presided over Williams' trial retired; accordingly, this matter was assigned to another judge.

a. In the alternative, did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective in failing to cross-examine Foster with his criminal record?

2. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to introduce evidence of Shawn Astillero's extensive criminal record to support the proffered defense that Astillero was the real shooter?

3. Did the PCRA court err in summarily dismissing the claim that prior counsel were ineffective for failing to preserve the claim that the trial court improperly threatened and coerced Commonwealth witness Valene Mouzon[e] to testify consistent with her police statement?

Williams' Br. at 3 (trial court answers omitted).

Williams alleges that the PCRA court inappropriately dismissed his ineffective assistance of counsel claims or, at a minimum, should not have dismissed his claims without an evidentiary hearing. "Our standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011). Further, PCRA petitioners are "not automatically entitled to an evidentiary hearing." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014). This Court has stated:

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its

> determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. [A]n evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.

*Id.* (internal quotations and citations omitted). We review a PCRA court's dismissal of a petition without a hearing for an abuse of discretion. *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013).

"To prevail on . . . [ineffective assistance of counsel] claims, [the PCRA petitioner] must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [the petitioner] suffered prejudice because of counsel's action or inaction." *Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011). It is well settled that trial counsel is not ineffective for failing to raise a meritless claim. *Commonwealth v. Fears*, 86 A.3d 795, 810 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Williams*, 980 A.2d 510, 520 (Pa. 2009).

First, Williams argues that his trial counsel was ineffective for failing to object to the Commonwealth's use of eyewitness Foster's prior testimony from the preliminary hearing. Williams asserts that he was not given a full and fair opportunity to cross-examine Foster at the preliminary hearing and the Commonwealth's use of the testimony at trial interfered with Williams' right to confront Foster under the Sixth Amendment to the United States

Constitution ("Confrontation Clause") and Article One, Section Nine of the Pennsylvania Constitution.

The PCRA court found that this Court's prior decision regarding the Confrontation Clause issue is law-of-the-case. Where an appellate court concludes that an appellant waived a claim but also determines "that even if the claim[] had not been waived, [it] was without merit, and . . . explain[s] the basis for its conclusion[]," the determination that the claim is meritless is a "valid holding that constitutes law of the case." *Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa. 2009). This Court, on direct appeal, determined that Williams' Confrontation Clause claim was waived. We further concluded that even if Williams had preserved the issue, it was meritless:

> The record establishes that prior to Mr. Foster's testimony at the preliminary hearing, the Commonwealth supplied defense counsel with Foster's prior statement to police along with Foster's criminal record. Counsel relied on this information to conduct a lengthy cross-examination of Foster which covered Foster's drug habit at the time of the shooting, his use of aliases, and the prior statement he had given homicide detectives.
>
> It is well-settled in our jurisprudence that admission of prior recorded testimony from a preliminary hearing as substantive evidence is an exception to the hearsay rule and constitutes no violation of a defendant's rights under the Confrontation Clause to the Sixth Amendment of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution where the witness is unavailable, and the defendant had counsel and a full and fair opportunity for cross-examination at the preliminary hearing. *See Commonwealth v. Leak*, 22 A.3d 1036, 1043-44 (Pa. Super. 2011) (collecting cases). As noted

above, [Williams] had a full and fair opportunity to cross-examine Foster at the preliminary hearing. Moreover, we also note that the jury was also read a stipulation that Foster had open criminal cases involving aggravated assault and drug offenses in which he used aliases, had failed to appear for hearings related to those cases, and was a fugitive on the day he provided his statement to authorities. On this record, therefore, we reject [Williams'] claim.

*Williams*, unpublished mem. at 5-6. Accordingly, we are bound by this Court's determination that the claim lacked merit. *See Reed*, 971 A.2d at 1220; *cf. Commonwealth v. Mitchell*, 152 A.3d 355, 358-59 & n.1 (Pa.Super. 2016). We conclude that the PCRA court did not err in concluding that Williams' ineffectiveness claim failed to meet the arguable merit prong and did not abuse its discretion in dismissing the ineffectiveness claim.[4]

Alternatively, Williams argues that his trial counsel was ineffective for failing to impeach Foster with his criminal record at the preliminary hearing. Williams asserts that trial counsel had "no tactical reason for not impeaching Foster with his record," Williams' Br. at 24, and he was "denied a fair trial because his jury never got to see Foster being confronted with evidence of his prior record," *id.*

The PCRA court concluded that Williams was not entitled to relief:

---

[4] Williams also claims that appellate counsel was ineffective for failing to assert the proper grounds to prove Williams' confrontation clause argument. Because Williams' underlying claim lacks arguable merit, appellate counsel was likewise not ineffective for failing to raise it.

After careful review of the record, this court is satisfied that the claim of counsel's failure to impeach Mr. Foster at [the] preliminary hearing is without arguable merit and that counsel possessed a reasonable basis for his actions.

First, [Williams'] assumptions regarding such "critical confrontations" are mistaken. As the Commonwealth points out, this "is always the case with former testimony of unavailable witnesses. To hold this was improper would be an unauthorized elimination of the rule." Motion to Dismiss, 10/09/2015, p.9, FN 7.

Second, our Supreme Court has held stipulation to be a proper substitute for impeachment. *See **Commonwealth v. Hanible***, [] 30 A.3d 426 ([Pa.] 2011) (no arguable merit in defendant's position that "trial counsel was ineffective in failing to impeach [witness] with her previous use of aliases, instead of stipulating to such fact").

Finally, [Williams] himself categorically states that impeaching a witness at preliminary hearing is improper:

> As we briefed in our Amended PCRA petition, counsel's tactics and objectives are completely different at a preliminary hearing than at trial. **The record before this Court is that in Philadelphia[,] criminal record impeachment of a testifying witness at a preliminary hearing is prohibited, and [Williams' trial counsel], aware of that fact, would naturally have declined to attempt to do something improper, irrespective of whether the Commonwealth objected.** Exploration of credibility issues is simply not permitted because, according to Philadelphia practice and all the assistant district attorneys who never stop objecting at preliminary hearings, credibility is irrelevant.

[Williams'] Reply, 11/01/2015, p.4 (emphasis added).

> Therefore, for the reasons stated by [Williams] himself, [Williams'] counsel had a reasonable basis for his actions,[5] and [Williams'] claim must fail.

Trial Ct. Op., 6/20/16, at 9-10.

We agree with the PCRA court's conclusions, which are supported by the record. Our Supreme Court has concluded that any defect caused by a failure to impeach a witness at a preliminary hearing is cured where the impeaching evidence is admitted at trial. *See Hanible*, 30 A.3d at 455-56. Here, Williams and the Commonwealth entered a stipulation that "Foster had three open criminal cases in Philadelphia as of July of 2003," and explained the main charge in each case. N.T., 3/18/09, at 87. The parties also stipulated that Foster "failed to appear for court for hearing in each of those three cases," resulting in bench warrants for Foster's arrest. *Id.* The stipulation finally informed the jury that Foster was arrested on those warrants, and, after a hearing, the warrants were withdrawn and Foster was released on bail. *Id.* The stipulation cured any defect caused by trial counsel's "failure" to cross-examine Foster at the preliminary hearing about his open cases. *See Hanible*, 30 A.3d at 455-56; *see also*

---

[5] Generally, in considering whether counsel had a reasonable basis for his or her actions, courts should hold an evidentiary hearing and are "not to glean, surmise, or speculate with regard the strategy of counsel except in those rare instances where [counsel's] strategy is clear and obvious from the record under review." *Commonwealth v. McGill*, 832 A.2d 1014, 1022 (Pa. 2003). However, we conclude that trial counsel's strategy here is clear and obvious from the record, and the PCRA court appropriately determined the reasons for counsel's actions from the record.

*Commonwealth v. Melson*, 637 A.2d 633, 640 (Pa.Super. 1994) (holding that entry of stipulation as to affair between witness and defendant was adequate to cure failure to cross-examine witness on affair and possible revenge motive). Therefore, the PCRA court did not err in finding that the claim lacked merit and did not abuse its discretion in dismissing Williams' claim.

Next, Williams asserts that his trial counsel was ineffective for failing to introduce Shawn Astillero's prior convictions for firearm possession and violent crimes to support Williams' defense that Astillero committed the murder. According to Williams, "Astillero's long record of gun-related violence showed his easy access to guns, his willingness to use them, [and] that he had the means and opportunity on this occasion[,]" which are permitted under Pennsylvania Rule of Evidence 404(b)(2). Williams' Br. at 22. Williams argues that this evidence would have bolstered Jermaine Butterfield's testimony that Astillero was the actual shooter and that he "was clearly permitted to defend these charges on the basis that someone else killed the victim, that some else had the means, motive and opportunity, that someone else was capable." *Id.* at 23. We disagree.

"A defendant has a fundamental right to present evidence, so long as the evidence is relevant and not subject to exclusion under [the Pennsylvania] Rules of Evidence." *Commonwealth v. Patterson*, 91 A.3d 55, 71 (Pa. 2014). "It is well established that evidence which tends to show that the crime for which an accused stands trial was committed by someone

else is relevant and admissible." ***Commonwealth v. Weiss***, 81 A.3d 767, 806 (Pa. 2013) (quoting ***Commonwealth v. McGowan***, 635 A.2d 113, 115 (Pa. 1993)).  Thus, "criminal defendants are entitled to offer evidence that some other person committed a similar crime at or around the same time they are alleged to have committed a crime." ***Commonwealth v. Palagonia***, 868 A.2d 1212, 1216 (Pa.Super. 2005).  However:

> [e]vidence to establish this fact is admissible after consideration of two distinct factors that coalesce to establish its relevance and probative value.  Those factors are: 1) the lapse of time between the commission of the two crimes; and 2) the resemblance between the methodologies of the two crimes.  Thus, even if the time lapse between the commission of the crimes is brief . . ., the evidence is not admissible unless the nature of the crimes is so distinctive or unusual as to be like a signature or the handiwork of the same individual.

***Id.*** (citations and quotations omitted).

Here, as the Commonwealth points out, Williams admits that he sought to introduce Astillero's criminal record to show his "pre-disposition towards violence and his easy access to and ready use of guns." Cmwlth.'s Br. at 15 (quoting Williams' Br. at 33).  Williams offered only a criminal extract, which showed that Astillero was charged with firearm offenses in 1996, 2001, and 2004, but was never convicted of a firearm offense.  The extract also shows that Astillero was charged with assault twice in 1996 and robbery once in 2004, but was never convicted on those charges.  Not only do these prior incidents lack convictions, but the criminal extract also fails to indicate the resemblance between Astillero's prior incidents and the instant

murder. Under these circumstances, Williams did not seek to introduce evidence that Astillero "committed a crime which bears a highly detailed similarity to the crime with which [Williams] was charged," **Weiss**, 81 A.3d at 806-07, and the trial court properly excluded the evidence. Because Williams' ineffectiveness claim failed to meet the arguable merit prong,[6] the PCRA court did not abuse its discretion by dismissing this ineffectiveness claim without a hearing.

Finally, Williams contends that his trial counsel was ineffective for failing to object to the trial court's admonishment of Valene Mouzone. According to Williams, the trial court's warning, given outside the presence of the jury, that Mouzone could be subject to prosecution for perjury if she failed to testify consistent with her prior statements influenced Mouzone's

---

[6] In its opinion, the PCRA court dismissed Williams' claim, but relied on Pennsylvania Rule of Evidence 404(b)(1), which prohibits introduction of "evidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.Evid. 404(b)(1). In response, Williams argued that the evidence was admissible under Rule 404(b)(2), which allows such evidence of crimes or other bad acts for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . . [where] the probative value of the evidence outweighs is potential for unfair prejudice." **Id.** (b)(2). While Williams correctly argues that prior bad acts are generally admissible under Rule 404(b)(2) for purposes other than proving character, Williams does not argue that the offense included in the criminal extract was sufficiently similar to the instant murder to act as a signature. Therefore, we affirm the PCRA court's ruling on a different basis. **See Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa.Super. 2012) ("This Court may affirm a PCRA court's decision on any grounds if the record supports it.").

testimony and violated Williams' due process rights. Williams asserts that he was prejudiced because without Mouzone's testimony, "the Commonwealth would been left with nothing more than Foster and the defense would have had its own eyewitness to rebut him." Williams' Br. at 37. According to Williams, his trial counsel should have objected based on the United States Supreme Court's decision in *Webb v. Texas*, 405 U.S. 95 (1972) (*per curiam*). We disagree.

The record shows that the exchange between Mouzone and the trial court began when Mouzone called Williams a "monster" in front of the jury. N.T., 3/16/09, at 125. After the trial court removed the jury and admonished Mouzone for her outburst, Mouzone stated that she refused to testify against Williams out of fear for her and her daughter's lives. *Id.* at 126-29. The trial court explained to Mouzone that she could not refuse to testify and, if she continued to do so, the trial court could detain her until she was willing to testify. *Id.* at 128-33. Mouzone continued to express reluctance to testify, and the trial court again explained that Mouzone did not have a choice and if she feared retribution by Williams or others associated with Williams, the District Attorney's Office could protect her. *Id.* at 133-52. Eventually, Mouzone stated that she "want[ed] to get on the stand and answer the questions," but asked the trial court "[i]f I don't remember, Your Honor, then what?" *Id.* at 154. Williams' trial counsel objected, stating that "this [was] a blatant case of this witness telling the Court now that she does remember because she's going to get on the stand

and, basically, commit perjury." *Id.* at 154-55. The trial court noted that Mouzone had previously told both the Commonwealth and the trial court that she remembered what happened on the day of the murder and explained that "[i]f you get on the stand and say you don't remember, then you will have committed a crime, not just contempt of court, but the crime of perjury, and you can be prosecuted for that." *Id.* at 155. After further discussions with the Commonwealth and the trial court, Mouzone agreed to and did testify. *Id.* at 164-220.

We conclude that Williams' reliance on **Webb** is misplaced. In **Webb**, the trial court, *sua sponte*, admonished the only defense witness that if he chose to testify inconsistent with his prior statement, "the [c]ourt will personally see that your case goes to the grand jury and you will be indicted for perjury[,]" and that the witness did not "owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking." 409 U.S. at 96. The witness refused to testify and was excused. *Id.* The United States Supreme Court concluded because "the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* at 98.

Here, Mouzone clearly acknowledged that she remembered the events of the day in question and, once advised that she could not refuse to testify, she prospectively asked the trial court about the ramifications of testifying

- 15 -

that she could not remember the events. In response, the trial court stated that Mouzone would perjure herself if she did so and that she could "be prosecuted for that." N.T., 3/16/09, at 155. Unlike the trial court in **Webb**, the trial court here only advised Mouzone that she could be liable for perjury if she chose to testify inconsistent with her prior statement; the admonishment was not intended to coerce Mouzone into testifying in a particular fashion or to convince her to refuse to testify.[7] It is also clear, as the PCRA court found, that "this sudden amnesia was feigned in order to

---

[7] We also note a factual distinction with a Pennsylvania case on trial court coercion of witnesses in **Commonwealth v. Laws**, 378 A.2d 812 (Pa. 1977). There, the trial court intervened when a Commonwealth witness unexpectedly "gave testimony favorable to the defense" that was different that his prior statements given at a preliminary hearing. **Id.** at 814-15. Over defense objection, the trial court questioned the witness about the testimony, read him his testimony from the preliminary hearing, and warned the witness about the "consequences of perjury." **Id.** at 815. The trial court continued to ask the witness whether he was telling the truth and whether he wanted to change his testimony. **Id.** Eventually, the witness recanted and adopted his statements from the preliminary hearing. **Id.**

There, our Supreme Court concluded that the trial court had overlooked its duty of impartiality and its warnings "unduly pressured [the witness] to retract the testimony he initially gave at trial, and to adopt his testimony from the preliminary hearing" **Id.** at 816. This case, however, is unlike **Laws** because the record shows that Mouzone clearly remembered what had occurred and feigned amnesia in an attempt to be released from her duty to testify. The trial court's admonishment was not an attempt to change Mouzone's testimony, but instead encourage Mouzone to testify. Therefore, the trial court properly warned Mouzone of the consequences of perjury and did not improperly attempt to induce Mouzone into changing her testimony.

avoid both contempt of court and retaliation for her testimony." Trial Ct. Op., 6/20/16, at 15. We agree with the PCRA court that Williams' claim lacks merit.[8]

Because we conclude that the PCRA court did not abuse its discretion in dismissing Williams' claims, we also conclude that the PCRA court did not abuse its discretion in dismissing the claims without an evidentiary hearing. *See Miller*, 102 A.3d at 992.

Order affirmed.

Judge Ransom joins in the Memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2017

---

[8] Williams also claims that appellate counsel was ineffective for failing to raise this issue on direct appeal. Because Williams' underlying claim lacks arguable merit, we similarly conclude that appellate counsel was not ineffective for failing to raise this issue.