J-S54029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
EARNEST LEE JONES, II :
:
Appellant : No. 139 MDA 2019

Appeal from the Judgment of Sentence Entered December 19, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002599-2017

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:              **FILED NOVEMBER 26, 2019**

Earnest Lee Jones, II, appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, after a jury convicted him of one count of aggravated assault[1] and one count of strangulation—applying pressure to throat or neck.[2]  Upon careful review, we affirm.

The facts of the case are as follows:

Rebecca Bennett and [Jones] began dating in late December 2016.  They lived together at 418 Salem Avenue in York City.  Both [Bennett] and [Jones] were named on the lease.  [Jones] was also dating a second woman, Dawn Stehler, who[m] he moved into the apartment that he shared with [Bennett.[3]]

_____

[1] 18 Pa.C.S.A. § 2702.

[2] 18 Pa.C.S.A. § 2718(a)(1).

[3] Jones, Bennett, and Stehler shared the same apartment simultaneously.

On March 26, 2017, [Jones], [Bennett], and [Stehler], went to a gathering at [Jones's] aunt's house in Lancaster. When they came home [Bennett] said something to [Jones] and he became irate. [Jones] then attacked [Bennett]. The assault began with [Jones] punching [Bennett] in the face repeatedly. He then dragged her by her hair across the apartment, from the living room to the bathroom.

Once in the bathroom, [Jones] strangled [Bennett]. He applied so much pressure to her throat that she lost consciousness and urinated on herself. When [Bennett] regained consciousness[,] [Jones] resumed punching her. He then strangled her a second time; she did not lose consciousness the second time. [Jones] eventually stopped and [Bennett] was able to go to bed.

However, the fight did not end at that point. [Jones] then began threatening [Bennett]. He held a pair of scissors up to her throat and told her that he was going to kill her. By the time [Jones's] attack was finished, [Bennett] was left with bruises all over her body.

Throughout this ordeal, [Bennett] felt that she was unable to leave the apartment because of the actions of [Jones] and [Stehler].[4] She was finally able to leave the next morning, March 27, 2017. [Bennett] first attempted to file for a Protection from Abuse Order at the York County Courthouse. However, she was allegedly told by the clerk that she needed to go to the hospital because of her injuries.

[Bennett] was seen at York Hospital on March 27, 2018[,] by forensic nurse Patti O'Brien. Nurse O'Brien was qualified as an expert witness in the field of forensic nursing during trial. Nurse O'Brien's testimony regarding [Bennett's] injuries was extensive. Ultimately, Nurse O'Brien testified that [Bennett's] injuries were consistent with being hit, punched, strangled, and pulled by her hair.

[At trial,] [Jones] gave his own version of how [Bennett] got the bruises that showed in Nurse O'Brien's photos. His explanation was that the bruises were self-inflicted; [Bennett] had caused the

---

[4] Prior to Jones's trial, Stehler pled guilty to false imprisonment for preventing Bennett from leaving the house on the night of the incident in question.

bruising herself when she tried to find a vein in her neck that she could inject heroin into. This explanation was rejected by Nurse O'Brien.

Trial Court Opinion, 3/14/19, at 4-6 (citations to record omitted).

Jones was arrested on March 28, 2017. On April 19, 2017, Magisterial District Judge Joel Toluba held a preliminary hearing, during which Kate Landis, Esquire, of the York County Public Defender's Office represented Jones. At the preliminary hearing, Bennett testified and Attorney Landis cross-examined her. Jones was formally arraigned on May 26, 2017, during which Joshua Neiderhiser, Esquire, of the York County Public Defender's Office represented him. On August 9, 2017, a pre-trial conference was held.

In November 2017, Jones petitioned for new counsel. The court granted his request, and on December 8, 2017, the court appointed Jonelle Eshbach, Esquire, to represent Jones. Due to the appointment of new counsel, Jones filed a motion for continuance. The court granted Jones's motion and postponed the trial until 2018. Before trial commenced, Bennett died of a drug overdose. On May 2, 2018, the Commonwealth filed a motion *in limine* to declare Bennett unavailable and to admit her preliminary hearing testimony as evidence at trial. The Honorable Harry M. Ness granted this motion. On May 15, 2018, Jones filed a motion for reconsideration of the Commonwealth's motion *in limine*, which the court denied.

On November 1, 2018, the jury found Jones guilty of the above-named offenses. On December 19, 2018, the court sentenced Jones to ten to twenty

years of imprisonment for aggravated assault, and thirty-five to seventy months of imprisonment for strangulation.

On January 18, 2019, Jones timely filed a notice of appeal. On January 30, Jones filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On February 15, 2019, Jones filed an amended Rule 1925(b) statement. Jones raises the following issues on appeal:

1. Whether the trial court erred by ruling that Bennett's preliminary hearing testimony was admissible pursuant to Pa.R.E. 804(b)(1);

2. Whether the trial court erred by refusing Jones's motion *in limine* to prohibit the admission of Bennett's preliminary hearing testimony pursuant to Pa.R.E. 804(b);

3. Whether the verdicts were inconsistent with the evidence; and

4. Whether the trial court improperly admitted impeachment evidence against defense witness Stehler of her prior conviction for false imprisonment.

Brief of Appellant, at 6-7.

Jones first argues that the court abused its discretion by admitting Bennett's preliminary hearing testimony without affording him an opportunity to fully and fairly cross-examine her. *Id.* at 30.

A claim regarding a defendant's full and fair opportunity to cross-examine a witness implicates the right to confrontation under the Pennsylvania and United States Constitutions. *See Commonwealth v. Bazemore*, 614 A.2d 684, 685 (Pa. 1992) ("Under both our federal and state constitutions a criminal defendant has a right to confront and cross-examine witnesses against him."). As such, "our standard of review over the trial

court's admission of the contested testimony is *de novo* and our scope of review is plenary." **Commonwealth v. Mitchell**, 152 A.3d 355, 358 (Pa. Super. 2016).

If a witness is unavailable, his or her statements are not excluded by the rule against hearsay if the former testimony was: (1) given as a witness at a trial, hearing, or lawful deposition, whether during the current proceeding or a different one; and (2) is now offered against a party who had an opportunity and similar motive to develop it by direct, cross-, or redirect examination. **See** Pa.R.E. 804(b)(1); **see also Bazemore**, **supra**, at 685 (stating defendant only deprived of full and fair opportunity when "the defense has been denied access to vital impeachment evidence either at or before the time of the prior proceeding at which that witness testified.").

We have previously examined the admissibility of statements made by unavailable witnesses during preliminary hearings as follows:

> Our Supreme Court has made clear that the admission at trial of previously [recorded] testimony depends upon conformity with applicable evidentiary rules and the defendant's constitutional right to confront witnesses against him. **Commonwealth v. Leak**, 22 A.3d 1036, 1043–[10]44 (Pa. Super. 2011). **See also Commonwealth v. Rizzo**, [] 726 A.2d 378, 380 n.2 ([Pa.] 1999) ("Pennsylvania law permits the admission of prior recorded testimony from a preliminary hearing as an exception to the hearsay rule when the witness is unavailable, the defendant had counsel, and the defendant had a full and fair opportunity for cross-examination at the preliminary hearing."); Pa.R.E. 804(b)(1).

> Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."

> ***Commonwealth v. Allshouse***, [] 36 A.3d 163, 171 ([Pa.] 2012) (citing ***Crawford v. Washington***, 541 U.S. 36, 68 [] (2004)). Whether prior testimony was given at trial or at any other proceeding, where, as here, admission of that prior testimony is being sought as substantive evidence against the accused, we conclude that the standard to be applied is that of *full and fair opportunity* to cross-examine. [***Bazemore***, ***supra***, at 687] (emphasis in original).
>
> The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial. ***Leak***, ***supra***, at 1045 (citation omitted).

***Mitchell***, ***supra***, at 358-59 (quotation marks omitted).

Here, Bennett's preliminary hearing testimony is admissible as an exception to the hearsay rule under Rule 804(b)(1). Bennett was unavailable for trial as a result of her death, Jones had counsel at the time of the preliminary hearing, and Jones had a *full and fair opportunity to cross-examine* Bennett at that hearing, and did so. **See** Preliminary Hearing, 4/19/17, at 16–29; **see also Rizzo**, **supra**, at 380 n.2. Jones argues that had his prior counsel, Attorney Landis, had information regarding Bennett's motive, intoxication, and bias prior to the preliminary hearing, Attorney Landis would have cross-examined Bennett more thoroughly. Brief of Appellant, at 31. Attorney Landis, however, had the opportunity to ask Bennett any relevant questions. **See** Preliminary Hearing, 4/19/17, at 16–29. Notably, Attorney Landis asked Bennett whether she was intoxicated during the incident at issue. ***Id.*** at 18. Simply because Attorney Landis did not cross-examine Bennett as extensively as she may have at trial, does not mean she

did not have the opportunity to do so. **See Leak**, **supra**, at 1045. Moreover, there is no evidence that the Commonwealth denied Jones "access to vital impeachment evidence" prior to, or at the time of, the preliminary hearing. **See Bazemore**, **supra**, at 686. Therefore, the preliminary hearing transcript was properly admitted as evidence under Rule 804(b)(1).

Jones next asserts that the trial court erred in denying his motion for reconsideration to prohibit the admission of Bennett's preliminary hearing testimony. Brief of Appellant, at 39. Because we have determined that the testimony was properly admitted, this claim is meritless and we need address it no further.

Jones next asserts that the verdicts were inconsistent with the evidence. Brief of Appellant, at 40. Jones, however, fails to develop this argument with citations and analysis of pertinent case law. **See id.** at 40–42. For this reason, we find this issue is waived on appeal. **See** Pa.R.A.P. 2119(a); **see also Commonwealth v. Hernandez**, 39 A.3d 406, 412 (Pa. Super. 2012) (claim waived where appellant offered no pertinent case law or other authority in support of his position).

Lastly, Jones asserts the trial court improperly admitted impeachment evidence of Stehler's prior conviction for false imprisonment. Brief of Appellant, at 42. Prior to assessing the merit of this claim, we must first determine whether the issue has been preserved on appeal.

Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Failure to object to testimony at trial constitutes waiver of the claim on appeal. ***Commonwealth v. Powell***, 956 A.2d 406, 423 (Pa. 2008).

Here, Jones failed to object to the Commonwealth's introduction of evidence of Stehler's prior conviction of false imprisonment. N.T. Trial, 10/31/18, at 246. When the Commonwealth brought in the evidence, the following exchange occurred:

> [ATTORNEY ROBERTS]: You pled guilty to a charge of false imprisonment; [is] that right?
>
> [STEHLER]: Right.
>
> ATTORNEY ESHBACH: Objection. Calls for knowledge of the law that a layperson [would not] have.
>
> THE COURT: She would have filled out a [g]uilty [p]lea [c]olloquy. She would have some understanding as to what she pled guilty to.
>
> ATTORNEY ESHBACH: *I object to the form of the question*. Asking her what the elements are.
>
> THE COURT: [Attorney Roberts,] [d]o you want to rephrase the question?

***Id.*** (emphasis added). Attorney Eshbach solely objected to the form of the question, never contesting the content of the Commonwealth's impeachment

- 8 -

evidence. Because Jones failed to lodge a timely objection, he has waived his claim on appeal. *See* Pa.R.A.P. 302.[5]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2019

---

[5] Even if Jones had raised this issue in the trial court, the evidence would have been admissible. Prior to Jones's trial, Stehler pled guilty to false imprisonment of Bennett. At trial, Stehler testified that she never physically prevented Bennett from leaving the apartment, which was inconsistent with her guilty plea. N.T. Trial, 10/31/18, at 245. The Commonwealth used this prior inconsistent statement to impeach Stehler's credibility pursuant to Pa.R.E. 613. Thus, the court properly admitted the evidence. *See Commonwealth v. Brown*, 448 A.2d 1097, 1102 (Pa. Super. 1982) (stating prior inconsistent statement may be used to impeach witness so long as there is "evidence that the statement was made or adopted by the witness whose credibility is being impeached.").