J-A10018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOSE ORTIZ | |
| Appellant | No. 2799 EDA 2015 |

Appeal from the Judgment of Sentence dated April 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012020-2009
CP-51-CR-0012023-2009
CP-51-CR-0012026-2009

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.: **Filed August 4, 2017**

Appellant, Jose Ortiz, appeals from the judgment of sentence imposed after the trial court convicted him of crimes relating to the homicides of Roberto Beltran, Jose Ortiz,[1] and Luis Rivera. The trial court found Appellant guilty of three counts of first-degree murder and possessing an instrument of crime (PIC) as to all three victims,[2] and two counts of criminal conspiracy and recklessly endangering another person (REAP) as to Beltran and Ortiz.[3] We affirm.

The trial court detailed the factual background as follows:

---

[1] Appellant and this victim coincidentally share the same name.

[2] 18 Pa.C.S. §§ 2502, 907.

[3] 18 Pa.C.S. §§ 903, 2705.

On October 23, 2008, at approximately 12:58 p.m., [Appellant] along with Raymond Ayala, shot and killed Jose Ortiz and Roberto Beltran at the corner of North Mutter Street and West Indiana Avenue. [Appellant] and Ayala were paid to kill Ortiz by co-defendant Miguel Molina who ran an illicit drug operation. There were a number of conversations between these three men regarding the "elimination" of Ortiz, culminating in the homicides on October 23, 2008. Shortly after the last conversation with Molina, [Appellant], wielding a M-90 rifle, and Ayala, a handgun, shot the decedents multiple times. Dr. Edwin Lieberman performed autopsies on both decedents, and his reports were admitted by stipulation. As to Mr. Ortiz, Dr. Lieberman concluded that the cause of death was multiple gunshot wounds, and that the manner of death was homicide. Dr. Lieberman found that Ortiz suffered sixteen gunshots wounds, including wounds to his head, neck, buttock, abdomen, iliac crest, right thigh, left shoulder blade, and right chest. Dr. Lieberman concluded that Mr. Beltran's cause of death was multiple gunshot wounds, and the manner of death was homicide. He found that Beltran suffered nine gunshot wounds. N.T. 04/01/15, pp. 114-214; N.T. 04/02/15, pp. 49-52.

When Sergeant James Keenan of the Philadelphia Police Department arrived at the crime scene, he observed the two men lying on the ground with medics attempting to resuscitate one of them. After receiving information about the two shooters, Sergeant Keenan and other officers started searching the railroad tracks behind Indiana Avenue, but were unsuccessful in apprehending the perpetrators. Sergeant Keenan then went to the homicide unit to be interviewed by the detectives investigating these crimes. N.T. 04/01/15, pp. 116, 124.

Police Officer Gregory Yatcilla of the Crime Scene Unit responded to the crime scene to assist in the investigation. Upon arrival, he along with other members of his unit, took photographs and collected physical evidence, including fired cartridge casings that were subsequently sent to the firearms identification unit for comparison. Officer Yatcilla testified that there were fifteen shell casings found at the scene. N.T. 04/01/15, pp. 141-142.

Both [Appellant] and Ayala were arrested on November 3, 2009 in the area of Jasper and East Lippencott Streets. N.T. 04/02/15, pp. 32-37.

The key witness in the prosecution's case was Alfredo Hernandez, a former associate of Miguel Molina. Hernandez testified that he was present when Molina directed [Appellant] and co-defendant Ayala to "eliminate" Jose Ortiz. [Roberto Beltran was not an intended target]. Hernandez saw [Appellant] with a rifle, and Ayala with a handgun. He heard the shootings and saw them go through a fence and back down the hill towards the tracks from the area where the killings took place. The witness testified that on October 24, 2008, he had a conversation with [Appellant], wherein [Appellant] told him that he killed the two victims on October 23, 2008. N.T. 04/01/15, pp. 197-265.

The Commonwealth also introduced the testimony of Luis Rodriguez, taken at the preliminary hearing, after a finding that this witness was unavailable for trial. Rodriguez testified that, as with Hernandez, he worked for Molina's criminal drug operation. In his testimony, Rodriguez stated that he was present when Molina directed [Appellant] and Ayala to kill Jose Ortiz. He further stated that he saw [Appellant] with a rifle and Ayala with a handgun immediately before the killing of Jose Ortiz and Roberto Beltran. Further, he stated that he heard the gunshots and saw both men escape in a car driven by Molina after the victims were gunned down. N.T. 09/22/09, pp. 126-130.

On October 24, 2008, [Appellant] shot and killed Luis Rivera, at the corner of Howard and Tusculum Streets. Hernandez also witnessed this murder. According to Hernandez, [Appellant] chased Rivera down the street while shooting at him. The shooting ended when Rivera dropped dead at the corner of Howard and Tusculum Streets. His remains were taken for autopsy by Dr. Samuel Gulino, whose report was admitted by stipulation. Dr. Gulino determined that the cause of death was multiple gunshot wounds, and that the manner of death was homicide. He found that the victim suffered five gunshot wounds, including wounds to his left shoulder, upper and middle back, back of the torso, and right hand. N.T. 04/01/15, pp. 219-220; N.T. 04/02/15, pp. 53-54.

At trial, Detective Brian Peters testified as to the unavailability for trial of Luis Rodriguez. Detective Peters testified to the man's last known address, but that after an extensive search, police authorities were unable to locate

- 3 -

Rodriguez for trial. Furthermore, Rodriguez had himself been shot six times on November 12, 2008 because he had attempted to leave Molina's illegal drug operation. He had been in a relocation program for his safety, but left on his own accord. At the preliminary hearing Rodriguez displayed the stitches between his chest and abdomen received during medical treatment for his gunshot wounds. N.T. 04/01/15, pp. 33-70.

In addition, Detective Joseph Centeno also testified about his effort to locate Rodriguez, including a lead that the witness was in Buffalo, New York. Lastly, Officer William Hunter, a detective in the Philadelphia District Attorney's office, searched for Rodriguez in the witness's neighborhood. He also scanned local databases. Officer Hunter had previously brought both Hernandez and Rodriguez to court for [Appellant's] preliminary hearing. Detective Timothy Bass, a homicide detective assigned to the Fugitive Squad, also testified about his unsuccessful efforts to locate Rodriguez. He searched the Pennsylvania Prison System, the FBI federal inmate locator and the local hospitals. He did not find Luis Rodriguez. N.T. 04/01/15, pp. 71-87, 88 102; N.T. 04/02/15, pp. 6-15.

Trial Court Opinion, 6/30/16, at 2-5 (footnotes omitted).

On April 2, 2015, the trial court rendered its verdicts and sentenced Appellant to life in prison. Appellant filed a post-sentence motion which was denied by operation of law, and thereafter filed this appeal.

Appellant presents three issues for our review:

1. Whether the verdict should be vacated as to the charges of first-degree murder, and related offenses, for the murders of Jose Ortiz and Roberto Beltran, because the Commonwealth failed to prove each and every element of the crime charged beyond a reasonable doubt;

2. Whether the verdict should be vacated as to the charge of first-degree murder, and related offenses, for the murder of Luis Rivera, because the Commonwealth failed to prove each and every element of the crime charged beyond a reasonable doubt;

- 4 -

3. Whether the introduction into evidence of notes of testimony absent live testimony from said witness was improper and resulted in harm to Appellant.

Appellant's Brief at 6.

In his first two issues, Appellant challenges the sufficiency of the evidence. In his third issue, he claims that a specific portion of the evidence – the preliminary hearing transcript of Luis Rodriguez's testimony – was improperly admitted. Because this third issue impacts Appellant's sufficiency issues,[4] we address it first.

**The Admission of Luis Rodriguez's Preliminary Hearing Testimony**

Appellant claims that the trial court erred in admitting the preliminary hearing testimony of Luis Rodriguez. Appellant specifically asserts that the trial court erred by finding that Mr. Rodriguez was unavailable at the time of trial, and that by admitting the notes of Mr. Rodriguez's testimony from the preliminary hearing, Appellant was denied his constitutional rights to confrontation and cross-examination. Appellant's Brief at 15-18.

Our standard of review regarding admissibility of evidence is well-settled:

> "Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." An abuse of discretion is not merely an error of judgment; rather, discretion

---

[4] Appellant specifically avers that "Luis Rodriguez constituted 50% of the substantive evidence against Appellant relative to [Ortiz] and Beltran[.]" Appellant's Brief at 18.

is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ...

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1036 (Pa. Super. 2014) (citations omitted). However, to the extent that Appellant raises a constitutional claim, such challenge raises a question of law, and our standard of review over the trial court's admission of the contested testimony is *de novo* and our scope of review is plenary. *Commonwealth v. Mitchell*, 152 A.3d 355, 358 (Pa. Super. 2016), *citing Commonwealth v. Yohe*, 39 A.3d 381, 384 (Pa. Super. 2012).

Rule 804(b) of the Rules of Evidence provides an exception to the hearsay rule for the admission of former testimony by an unavailable witness:

The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony that:

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Rule 804(a) describes those situations when a witness will be deemed "unavailable" for purposes of Rule 804(b), including the following:

**Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:

- 6 -

. . .

(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

(A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) . . . .

But this paragraph (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

Appellant maintains that Rule 804(a)(5) was not met in this case because "good-faith efforts were not used by the Commonwealth" and "[v]ery little was done to find Luis Rodriguez" for trial. Appellant's Brief at 16. Appellant claims "few efforts" were made by the Commonwealth and says that such efforts "were initiated only two weeks prior to trial" and improperly focused on Philadelphia when authorities knew he was not in Philadelphia and more likely to be in Buffalo or Florida.[5] *Id.* at 16-17. This argument does not merit relief.

Where the Commonwealth seeks to admit a missing witness's prior recorded testimony, a "good faith" effort to locate the witness must be established. *Commonwealth v. Jackson*, 344 A.2d 842 (Pa. 1975). "The test for a witness's unavailability is whether the *prosecution* has made a

_____

[5] Appellant suggests that Detective Joseph Centeno, who was vacationing in Florida and made some phone calls to locate Mr. Rodriguez "[b]etween rounds of golf," should have done more during his vacation in Florida to "check out those contacts." Appellant's Brief at 16.

good faith effort to produce the live testimony of the witness. The length to which the prosecution must go to produce the testimony is a question of reasonableness." ***Commonwealth v. Melson***, 637 A.2d 633, 638 (Pa. Super. 1994) (emphasis in original, citations omitted), ***appeal denied***, 647 A.2d 509 (Pa. 1994). The Supreme Court has stated that the Commonwealth is not required to "establish that the witness has disappeared from the face of the earth." ***Commonwealth v. Blair***, 331 A.2d 213, 215 (Pa. 1975). "It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness, and the decision of the court will not be overturned absent an abuse of discretion." ***Commonwealth v. Lebo***, 795 A.2d 987, 990 (Pa. Super. 2002) (citations omitted).

Here, the trial court expressly concluded that "[t]he measures taken by the Philadelphia Police Department and the Philadelphia District Attorney's Office . . . were . . . reasonable means to procure the witness's presence." Trial Court Opinion, 6/30/16, at 10. Upon review, we find no abuse of discretion by the trial court in determining Mr. Rodriguez's unavailability. In its recitation of the evidence, the trial court referenced various efforts by the Commonwealth – as demonstrated by the actions of Detective Peters, Detective Centeno, Officer Hunter, and Detective Bass – to locate Mr. Rodriguez for trial. These included searches of Rodriguez's neighborhood in Philadelphia; scanning of various databases; pursuit of a

lead in Buffalo; and searches in local hospitals and in the state prison system and a listing of federal inmates. The trial court also noted that prior to the preliminary hearing, Mr. Rodriguez had been shot six times for trying to leave Mr. Molina's drug operation, and although Mr. Rodriguez "had been in a relocation program for his safety," he "left of his own accord." Trial Court Opinion, 6/30/16, at 11-12. Given these facts, and the test of reasonableness, the trial court did not abuse its discretion in finding Mr. Rodriguez to be unavailable for trial and permitting the Commonwealth to introduce his prior testimony.

Appellant additionally claims a constitutional violation of his rights because he "did not have the full opportunity to cross-examine" Mr. Rodriguez at the preliminary hearing and then was not able to cross-examine Mr. Rodriguez at trial because of his unavailability. Appellant's Brief at 17. Appellant claims that he had "just met" his counsel at the preliminary hearing, and counsel did not have time to prepare and was unaware that Mr. Rodriguez had a criminal record. *Id.*[6] These assertions are not supported by the record.

_____

[6] In support of this assertion, Appellant cites the statement at trial by Samuel Stretton, Esquire, who represented Appellant's co-defendant, Raymond Ayala. Referencing Appellant's counsel's statements at the preliminary hearing, Attorney Stretton stated, "Ms. McDermott . . . indicates . . . we're just seeing our clients." N.T., 4/2/15, at 77. The record is unclear as to when Attorney McDermott first met with Appellant. However, as we discuss more fully below, Attorney McDermott stated that her preparation was not an issue but expressed her concern about cross-
*(Footnote Continued Next Page)*

We note:

Under both the Pennsylvania and United States Constitutions, a criminal defendant has a right to confront and cross-examine the witnesses against him. ***Commonwealth v. Bazemore***, 531 Pa. 582, 614 A.2d 684, 685 (1992) (*citing **Commonwealth v. McGrogan***, 523 Pa. 614, 568 A.2d 924, 927 (1990)). It is well-established, however, that the introduction of an unavailable witness's prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the hearing. ***Commonwealth v. Paddy***, 569 Pa. 47, 800 A.2d 294, 312-13 (2002); ***Commonwealth v. Chmiel***, 558 Pa. 478, 738 A.2d 406, 417-18 (1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000); ***Commonwealth v. Rizzo***, 556 Pa. 10, 726 A.2d 378, 380 n. 2 (1999); ***Bazemore***, 614 A.2d at 687; ***Commonwealth v. Chestnut***, 511 Pa. 169, 512 A.2d 603, 605 (1986); ***Commonwealth v. Duncan***, 473 Pa. 62, 373 A.2d 1051, 1054 (1977); ***Commonwealth v. Johnson***, 758 A.2d 166, 169 (Pa. Super. 2000).

***Commonwealth v. McCrae***, 832 A.2d 1026, 1035 (Pa. 2003). The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial. ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 542 (Pa. Super. 1995) (citation omitted). We have explained:

The decisions of our Courts are clear that the admissibility of former testimony and its ability to withstand Confrontation Clause challenges derives not from the actual conduct or content

*(Footnote Continued)* ―――――――――――

examination of the Commonwealth's witnesses and communicating with Appellant about the cross-examination because both the witnesses and Appellant spoke Spanish as their first language. ***See infra*** at 11-14.

- 10 -

of cross-examination, *but from its availability.* ***See Commonwealth v. Wholaver****,* 605 Pa. 325, 989 A.2d 883, 904 (2010). Indeed, no less an authority than the United States Supreme Court has validated this limitation on application of the Confrontation Clause. That Court has held and reaffirmed that "there may be some justification for holding that the opportunity for cross-examination of a witness [at] a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable...." ***California v. Green****,* 399 U.S. 149, 165–66, 90 S.Ct. 1930, 26 L.Ed.2d 489 (quoting ***Barber v. Page****,* 390 U.S. 719, 725–726, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). Consistent with such pronouncements, the Supreme Court of Pennsylvania has recognized as well that the opportunity to cross-examine a witness, rather than its actual occurrence, fulfills the constitutional right of confrontation:

> Where the defendant has had the opportunity to cross-examine a witness at a preliminary hearing, probing into areas such as bias and testing the veracity of the testimony, cross-examination, and thus confrontation, within the meaning of the Sixth Amendment has been accomplished. This is particularly so in cases where, as here, the defendant was represented by the same counsel at the preliminary hearing and at trial.

***Wholaver****,* 605 Pa. 325, 989 A.2d 883, 904 (2010).

***Commonwealth v. Stays***, 70 A.3d 1256, 1265 (Pa. Super. 2013).

Our review reveals that although Appellant had different counsel at the preliminary hearing and trial,[7] his confrontation rights were not violated. Three witnesses testified at the preliminary hearing: Philadelphia Homicide Detective Jack Cummings, Alfredo Hernandez, and Luis Rodriguez. Prior to

---

[7] Appellant was represented by Barbara Ann McDermott, Esquire at the preliminary hearing and Regina M. Coyne, Esquire at trial and in this appeal.

the witnesses' testimony, and relative to cross-examination, the following exchange was initiated by Appellant's counsel, Attorney Barbara McDermott:

> **Attorney McDermott**:   I don't have the witnesses' statements or statement, so without the witness statement, it's going to be hard to cross-examine, so I may need time after the witness is done with the direct to at least communicate with my client for my questions on cross.  I can talk to my client now but I need the statement.

> **Assistant District Attorney**:   If I may, I am going to give the statements to counsel, not because she needs it for cross-examination, but I intend to preserve the testimony because her client attempted to kill a witness, so I will preserve it just in case.

> **Attorney McDermott**:  So the record is clear, judge, the only way that testimony can be preserved is if defense counsel has an adequate and meaningful opportunity to cross-examine.

> My position is, I can't have that opportunity unless I have the opportunity to communicate with my client.

> I do not represent my client in any other cases which he has –

> **The Court**: If you feel the need to talk to your client during the hearing, we can ask the interpreter to come over.  I don't know what else to do.  The Court is providing the interpreter.  Unfortunately, the witness needs the interpreter as well.

> **Attorney Stretton**[8]:  We are willing to work with you, but that's a good point as well as – the right of counsel does infringe on that, and this hearing, this testimony of these witnesses cannot be used at a later time without the individual interpreters sitting there to go back and forth.

---

[8]  As previously noted, Attorney Stretton represented Appellant's co-defendant Raymond E. Ayala.

**The Court**: That's for [the Assistant District Attorney] and a later judge to figure out if there's a problem.

**Attorney Stretton**: I just want to make the record clear that that's a problem here, and the lack of funds cannot undermine due process.

**Assistant District Attorney**: Since 2008, these attorneys—

**Attorney Stretton**: Well –

**Assistant District Attorney**: Your Honor, these cases have been listed since 2008. The reason for the length of time was to coordinate having all of the attorneys present. I finally have them present today. From 2008 to the present day, counsel could have at any point spoken to their clients regarding the incident.

**Attorney Stretton**: How, without an interpreter? They don't give that at the prison. I couldn't pay investigators. There's no money. They stopped paying in March and April.

**Attorney McDermott**: I don't want to belabor it. ***The issue is not in terms of preparation. I have been ready always.*** The Commonwealth was not ready at several listings.

**The Court**: The bottom line is we have one interpreter; that's it. There's nothing I can do about it. We'll do what we can. If you feel the need to talk to your client in the middle of the hearing, we'll have the interpreter help you out. There's nothing I can do.

**Attorney McDermott**: Can I have the record reflect, while it's true my client was charged, the Commonwealth sealed the identity of the witnesses, and it is right now that I am finding out the identity of Alfredo Hernandez and was given his statements.

**Assistant District Attorney**: For the record, speaking to the witnesses, all these defendants do speak English. They are more fluent in Spanish, but they are all fluently bilingual.

- 13 -

In addition, counsel is aware this witness was shot by Ms. McDermott's client.

**Attorney McDermott**: Again, I don't represent him on that case. I have no information about that case.

**The Court**: All right. Again, this is just representations of counsel on the record. You made your record.

N.T., 9/22/09, at 4-8 (emphasis added).

The hearing proceeded with the respective testimonies of Detective Cummings, Alfredo Hernandez, and Luis Rodriguez. At the outset of Mr. Rodriguez's testimony, the Assistant District Attorney advised, "Sir, you have an interpreter, and I know you speak English also, but you must answer everything in Spanish." *Id.* at 122-123. Occasionally, Mr. Rodriguez responded in English. *Id.* at 127-128, 130, 146, 150, 151. The trial court stated "Mr. Rodriguez, you have to – I don't know if you can interpret it. He seems to understand English." *Id.* at 28. On cross-examination, counsel for co-defendant Miguel Molina admonished Mr. Rodriguez to "Let [the interpreter] interpret first" and "[w]ait for the interpreter" before responding. *Id.* at 144, 147. Attorney McDermott then cross-examined Mr. Rodriguez. *Id.* at 150-154. At the end of her questioning, Attorney McDermott asked, "Can I have the interpreter for a second, Your Honor?" *Id.* at 154. The trial court said "sure" and the record reflects that Attorney McDermott and Appellant "confer[red] off the record." *Id.* at 154-155. After conferring with Appellant, Attorney McDermott advised that she had "[n]o further questions." *Id.* at 155. Given this record, we find that

- 14 -

Appellant's counsel – who stated that "preparation was not the issue" and communicated with Appellant during cross-examination and with the benefit of an interpreter – had a full and fair opportunity to cross-examine Mr. Rodriguez. Accordingly, Appellant's constitutional right to confrontation was not violated. ***Bazemore****,* 614 A.2d at 685.

## Sufficiency

In his remaining issues, Appellant contests the sufficiency of the evidence presented at trial.

> In reviewing a sufficiency of the evidence claim, our standard of review is well settled. We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. ***Commonwealth v. Sibley****,* 972 A.2d 1218 (Pa. Super. 2009). Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. ***Id.***

***Commonwealth v. Mollett***, 5 A.3d 291, 313 (Pa. Super. 2010), ***appeal denied***, 14 A.3d 826 (Pa. 2011).

In his second issue, Appellant claims the evidence was insufficient to sustain his convictions relative to the victims Jose Ortiz and Roberto Beltran because "there was no eyewitness testimony" and "the Commonwealth's entire case rests upon the live testimony of a drug dealer and user, and the preliminary hearing testimony notes from another member of the Molina drug organization." Appellant's Brief at 12-13. Appellant further asserts that "to find guilt based upon the testimonies of Hernandez and Rodriguez is

akin to guessing what actually occurred" and, "[i]f all that is required of the Commonwealth to obtain a guilty verdict is for drug sellers to point the finger at someone, then sufficiency of the evidence has no meaning, and anyone is at risk to be confined for life on such defective evidence." *Id.*

Appellant continues with this logic in his third issue, in which he assails the sufficiency of the evidence supporting his convictions relating to the victim Luis Rivera, although he fails to discuss the elements of the crimes of which he was convicted and focuses on the "the uncorroborated testimony of Hernandez." Appellant's Brief at 14. Appellant also references the testimony of Officer Hunter – "the only eyewitness testimony of someone who could not possibly have been involved in the murder" – noting that the officer heard gunshots but did not see Appellant at the scene.[9] *Id.*

Appellant's claims are meritless. It is well established that:

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. [**Commonwealth v. Sibley**, 972 A.2d 1218 (Pa. Super. 2009).] It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. **Commonwealth v. Jones**, 954 A.2d 1194 (Pa. Super. 2008). The Commonwealth's

---

[9] To the extent Appellant assails witness reliability, his challenge is to the weight and not the sufficiency of the evidence and is unavailing. **Commonwealth v. Palo**, 24 A.3d 1050, 1055 (Pa. Super. 2011) ("Directed entirely to the credibility of the Commonwealth's chief witness, Appellant's claim challenges the weight, not the sufficiency, of the evidence . . . Even if Appellant had preserved his weight claim, he would gain no relief. The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses").

burden may be met by wholly circumstantial evidence and "any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Sinnott*, 976 A.2d 1184, 1187 (Pa. Super. 2009).

*Mollett*, 5 A.3d at 313.

In addition to detailing the evidence adduced at trial, the trial court, sitting as the finder of fact, discussed the statutory elements of first-degree murder, PIC, criminal conspiracy, and REAP, and also discussed prevailing case law as it pertains to these crimes and the sufficiency of the evidence. Further, the trial court explained the factual basis and rationale for the convictions, including witness accounts of Appellant and his possession of a firearm, and medical examiner testimony regarding the multiple gunshot wounds suffered by the three victims. Trial Court Opinion, 6/30/16, at 5-9. Accordingly, in disposing of Appellant's sufficiency issues, we incorporate and adopt the trial court's analysis. *See id.*

In sum, and for the reasons discussed above, we find no merit to Appellant's evidentiary claims and affirm Appellant's judgment of sentence. The parties shall attach a copy of the trial court's June 30, 2016 opinion to any future filings relating to the merits of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/4/2017</u>

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :    CP-51-CR-0012020-2009

**FILED**     :    CP-51-CR-0012023-2009

        :    CP-51-CR-0012026-2009

v.     JUN 3 0 2016     :    SUPERIOR COURT

Criminal Appeals Unit
First Judicial District of PA

JOSE ORTIZ     :    3033 EDA 2015

## OPINION

Byrd, J.                                                  June 30, 2016

After a waiver trial commencing on April 1, 2015, defendant Jose Ortiz was convicted of three counts of first-degree murder and related offenses on April 2, 2015. Immediately after entry of the verdicts, defendant was sentenced to life imprisonment without the possibility of parole and an aggregate concurrent imprisonment term of twenty (20) to forty (40) years. On September 9, 2015, defendant filed a notice of appeal. This court ordered defendant to file a statement of matters complained of on appeal on September 10, 2015, and said statement was filed on October 1, 2015.

*Commw. v. Jose Ortiz*                  Page 1 of 11

## STATEMENT OF FACTS

On October 23, 2008, at approximately 12:58 p.m., defendant, along with Raymond Ayala, shot and killed Jose Ortiz[1] and Roberto Beltran at the corner of North Mutter Street and West Indiana Avenue. Defendant and Ayala were paid to kill Ortiz by co-defendant Miguel Molina who ran an illicit drug operation. There were a number of conversations between these three men regarding the "elimination" of Ortiz, culminating in the homicides on October 23, 2008. Shortly after the last conversation with Molina, defendant, wielding a M-90 rifle, and Ayala, a handgun, shot the decedents multiple times. Dr. Edwin Lieberman performed autopsies on both decedents, and his reports were admitted by stipulation. As to Ortiz, Dr. Lieberman concluded that the cause of death was multiple gunshot wounds, and that the manner of death was homicide. Dr. Lieberman found that Ortiz suffered sixteen gunshot wounds, including wounds to his head, neck, buttock, abdomen, iliac crest, right thigh, left shoulder blade, and right chest. Dr. Lieberman concluded that Beltran's cause of death was multiple gunshot wounds, and the manner of death was homicide. He found that Beltran suffered nine gunshot wounds. N.T. 04/01/15, pp. 114-214; N.T. 04/02/15, pp. 49-52.

When Sergeant James Keenan of the Philadelphia Police Department arrived at the crime scene, he observed the two men lying on the ground, with medics attempting to resuscitate one of them. After receiving information about the two shooters, Sergeant Keenan and other officers started searching the railroad tracks behind Indiana Avenue, but were unsuccessful in apprehending the perpetrators. Sergeant Keenan then went to the homicide unit to be interviewed by the detectives investigating these crimes. N.T. 04/01/15, pp. 116, 124.

---

[1] It is merely a coincidence that this victim bore the same name as the defendant.

Police Officer Gregory Yatcilla of the Crime Scene Unit responded to the crime scene to assist in the investigation. Upon arrival, he along with other members of his unit, took photographs and collected physical evidence, including fired cartridge casings that were subsequently sent to the firearms identification unit for comparison. Officer Yatcilla testified that there were fifteen shell casings found at the scene. N.T. 04/01/15, pp. 141-142.

Both defendant and Ayala were arrested on November 3, 2008 in the area of Jasper and East Lippencott Streets. N.T. 04/02/15, pp. 32-37.

The key witness in the prosecution's case was Alfredo Hernandez, a former associate of Miguel Molina. Hernandez testified that he was present when Molina directed the defendant and Ayala to "eliminate" Jose Ortiz.[2] Hernandez saw Ortiz with a rifle, and Ayala with a handgun. He heard the shootings and saw them go through a fence and back down the hill towards the tracks from the area where the killings took place. The witness testified that on October 24, 2008, he had a conversation with defendant, wherein Ortiz told him that he killed the two victims on October 23, 2008. N.T. 04/01/15, pp. 197-265.

The Commonwealth also introduced the testimony of Luis Rodriguez, taken at the preliminary hearing, after a finding that this witness was unavailable for trial. Rodriguez testified that, as with Hernandez, he worked for Molina's criminal drug operation. In his testimony, Rodriguez stated that he was present when Molina directed defendant and Ayala to kill Jose Ortiz. He further stated that he saw defendant with a rifle and Ayala with a handgun immediately before the killing of Jose Ortiz and Roberto Beltran. Further, he stated that he heard the gunshots and saw both men escape in a car driven by Molina after the victims were gunned down. N.T. 09/22/09, pp. 126-130.

---

[2] Roberto Beltran was simply collateral damage, a man at the wrong place at the wrong time.

On October 24, 2008, defendant shot and killed Luis Rivera, at the corner of Howard and Tusculum Streets. Hernandez also witnessed this murder. According to Hernandez, defendant chased Rivera down the street while shooting at him. The shooting ended when Rivera dropped dead at the corner of Howard and Tusculum Streets. His remains were taken for autopsy by Dr. Samuel Gulino, whose report was admitted by stipulation. Dr. Gulino determined that the cause of death was multiple gunshot wounds, and that the manner of death was homicide. He found that the victim suffered five gunshot wounds, including wounds to his left shoulder, upper and middle back, back of the torso, and right hand. N.T. 04/01/15, pp. 219-220; N.T. 04/02/15 pp. 53-54.

At trial, Detective Brian Peters testified as to the unavailability for trial of Luis Rodriguez. Detective Peters testified to the man's last known address, but that after an extensive search, police authorities were unable to locate Rodriguez for trial. Furthermore, Rodriguez had himself been shot six times on November 12, 2008 because he had attempted to leave Molina's illegal drug operation. He had been in a relocation program for his safety, but left on his own accord. At the preliminary hearing Rodriguez displayed the stitches between his chest and abdomen received during medical treatment for his gunshot wounds. N.T. 04/01/15 pp. 33-70.

In addition, Detective Joseph Centeno also testified about his effort to locate Rodriguez, including a lead that the witness was in Buffalo, New York. Lastly, Officer William Hunter, a detective in the Philadelphia District Attorney's office, searched for Rodriguez in the witness's neighborhood. He also scanned the local databases. Officer Hunter had previously brought both Hernandez and Rodriguez to court for defendant's preliminary hearing. Detective Timothy Bass, a homicide detective assigned to the Fugitive Squad, also testified about his unsuccessful efforts to locate Rodriguez. He searched the Pennsylvania Prison System, the FBI federal inmate locator

and the local hospitals. He did not find Luis Rodriguez. N.T. 04/01/15, pp. 71-87, 88-102; N.T. 04/02/15, pp. 6-15.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Defendant raised the following issues in his Statement of Matters Complained of on Appeal, in accordance with Pennsylvania Rule of Appellate Procedure 1925 (b):

1. The verdict be vacated as to the charge of first-degree murder, because the Commonwealth failed to prove each and every element of the crime charged beyond a reasonable doubt.

2. The verdict be vacated as to the charge of conspiracy, because the Commonwealth failed to prove each and every element of the crime charged beyond a reasonable doubt.

3. The verdict be vacated as to the charge of possession of an instrument of crime, because the Commonwealth failed to prove each and every of the crime charged; specifically, since no crime was committed as appellant was acting in justifiable self-defense, the conviction for PIC cannot be confirmed.

4. The verdict be vacated to the charge of REAP, because the Commonwealth failed to prove each and every element of the crime charged beyond a reasonable doubt.

5. The introduction into evidence notes of testimony absent live testimony from said witness was improper and should not have occurred, as the witness was not proven to be unavailable.

## DISCUSSION

Defendant first contends that there was insufficient evidence to establish that he committed first-degree murder. In evaluating whether the evidence was sufficient to sustain a conviction, the appellate court "must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and

inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Tate*, 485, Pa. 180, 182, 401 A.2d 353, 354 (1979). In applying this test, "the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001) (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000)). In *Commonwealth v. McKeithan*, 504 A.2d 294, 299 (Pa. Super. 1986), the court noted that "[a] person may be convicted on the basis of circumstantial evidence alone if reasonable inferences arising therefrom prove the fact in question beyond a reasonable doubt." In reviewing a sufficiency of the evidence claim, "it is not necessary that each piece of evidence be linked to the defendant beyond a reasonable doubt. It is only necessary… that the combination of evidence link the defendant to the crime beyond a reasonable doubt." *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977).

In *Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002), the court recognized that the "question of any doubt regarding the facts and circumstances established by the Commonwealth is for the fact finder to resolve unless the evidence is so weak and inconclusive, that as a matter of law, no probability of fact can be drawn from the combined circumstances." The appellate court may not weigh the evidence and substitute its judgment for the fact finder. *Commonwealth v. Taylor*, 831 A.2d 661 (Pa. Super. 2003). Further, "it is for the fact finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Mack*, 850 A.2d 690, 693 (Pa. Super. 2004). Moreover, "[t]he Commonwealth is entitled to every inference reasonably arising from the evidence" that it has presented. *Commonwealth v. Figueroa*, 456 Pa. 381, 384, 321 A.2d 658, 659 (1974).

To convict a person of first-degree murder, "the Commonwealth must demonstrate that the defendant acted with malice and a specific intent to kill, that a human being was unlawfully killed,

that the defendant committed the killing, and that the killing was intentional, deliberate, and premeditated." *Commonwealth v. Chamberlain*, 612 Pa. 107, 129, 30 A.3d 381, 394 (2011), *cert. denied*, 132 S.Ct. 2377 (2012). *See also* 18 Pa. C.S. §2502(a), (d). In *Commonwealth v. Hare*, 486 Pa. 123, 129, 404 A.2d 388, 391 (1979), the court explained that "[m]alice will be found if the actor committed a killing with an intent to kill[.]" Specific intent to kill "may be found from a defendant's word or conduct and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being." *Commonwealth v. Agie*, 449 Pa. 187, 190, 296 A.2d 741, 742 (1972). *See also Commonwealth v. Arrington*, 624 Pa. 506, 522, 86 A.3d 831, 840 (2014), *cert. denied*, 135 S. Ct. 479 (2014) (holding that "[s]pecific intent and malice may be established through circumstantial evidence"). In *Commonwealth v. Mason*, 55 Pa. 500, 741 A.2d 708 (1999), *cert denied*, 531 U.S. 829 (2000), the court explained that "premeditation and deliberation exist 'whenever there is a conscious purpose to bring about death.' " *Id.*, 559 Pa. at 510, 741 A.2d at 713 (quoting *Commonwealth v. O'Searo*, 466 Pa. 224, 240, 352 A.2d 30, 37 (1976)).

At trial, the Commonwealth introduced evidence that defendant, along with Ayala, approached Jose Ortiz and Roberto Beltran and shot each victim multiple times. Decedent Ortiz suffered sixteen gunshot wounds, and decedent Beltran received nine, as confirmed by the medical examiner. There was also evidence presented that defendant chased Rivera down a street and shot him repeatedly until he collapsed at the corner of Howard and Tusculum Streets. Rivera suffered five gunshot wounds, as confirmed by the medical examiner. The use of a deadly weapon on a vital point of a victim's body is sufficient evidence to sustain a conviction of first-degree murder. Thus, the Commonwealth proved beyond a reasonable doubt that defendant was guilty of three counts of first-degree murder.

Next, there was sufficient evidence to convict defendant of conspiracy. According to section 903 of the Crimes Code, 18 Pa. C.S. §903(a), a person is guilty of criminal conspiracy "with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." Here, defendant and Ayala were hired to kill Jose Ortiz by co-defendant Molina. Shortly after the meeting with Molina, defendant and Ayala approached Ortiz and shot him, along with Beltran, who was simply present at the scene.[3] This evidence demonstrates that defendant and Ayala entered into agreement with Molina to commit murder, and then took action to effectuate their agreement. Thus, the Commonwealth proved beyond a reasonable doubt that defendant was guilty of conspiracy.

Defendant was also convicted of possession of an instrument of crime. A defendant is guilty of this offense when he "possesses any instrument of crime with the intent to employ it criminally." 18 Pa. C.S. §907(a). An instrument of crime is "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa. C.S. §907(d). Here, the facts clearly demonstrate that defendant possessed a gun which he used to kill the victims in this case. *See Commonwealth v. Stokes*, 38 A.3d 846, 854 (Pa. Super. 2011) (holding that "[i]t is undisputed that a gun can be an instrument of crime"). Accordingly, the Commonwealth proved beyond a reasonable doubt that defendant was guilty of possession of an instrument of crime.

---

[3] Under the doctrine of transferred intent, defendant is also guilty of first-degree murder for the killing of Roberto Beltran.

Defendant claims that his conviction should be vacated, on the theory that he acted in self-defense. However, at no point was self-defense raised during the trial, and therefore this claim is waived and without merit. See Pa. R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

An individual is guilty of recklessly endangering another person "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. C.S. §2705. For a defendant's act to be considered reckless, "the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Commonwealth v. O'Hanlon*, 539 Pa. 478, 482, 653 A.2d 616, 618 (1995). Section 302(b)(3) of the Crimes Code, 18 Pa. C.S. §302(b)(3), further provides that:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

In this case, the evidence demonstrated that defendant was guilty of recklessly endangering another person. Certainly defendant's actions grossly deviated from the standard of conduct that a reasonable person would observe under these circumstances. The aforementioned facts clearly demonstrate that defendant acted recklessly during this incident and that he consciously disregarded an unjustified and substantial risk that injury and death could result from his conduct. Based on these facts, there was sufficient evidence to convict defendant of this offense. Therefore, the Commonwealth proved beyond a reasonable doubt that defendant was guilty of recklessly endangering another person.

Finally, defendant contends that introduction of Luis Rodriguez's notes of testimony from defendant's preliminary hearing was improper because the witness was not proven to be unavailable for trial. According to Pennsylvania Rule of Evidence 804, a witness can be considered unavailable if he or she:

> is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means to procure: (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or (B) the declarant's attendance or testimony in the case of a hearsay exception under Rule 804 (b)(2), (3), or (4).

In proving that a witness is unavailable, the Commonwealth must show that it made a good faith effort to secure the person's attendance at the trial. *See Commonwealth v. Lebo*, 795 A.2d 987, 991 (Pa. Super. 2002) (holding that "[i]t is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness, and the decision of the court will not be overturned absent an abuse of discretion"). The measures taken by the Philadelphia Police Department and the Philadelphia District Attorney's Office, as stated above, were determined by this court to have been reasonable means to procure the witness's presence. As stated in *Lebo*, this will not be overturned absent an abuse of discretion. Indeed, prior testimony of an unavailable witness is admissible when there is an "adequate opportunity and similar motive to develop the testimony by direct, cross or redirect examination." *Pa. R.E. 804. See also Commonwealth v. Strong*, 825 A.2d 658 (Pa. Super. 2003) (noting that "[t]he Supreme Court has held, however, 'that in order for a witness's prior testimony to be admissible pursuant to section 5917, the defendant against whom the testimony is to be admitted at a subsequent proceeding must have been afforded a full and fair opportunity to cross-examine the witness at the first proceeding.' "). The issues addressed must also be the same. *Strong*.

This court did not abuse its discretion in admitting this evidence. Here, the notes of testimony from the preliminary hearing were introduced after a finding by this court that the witness was unavailable and defendant had been afforded a full and fair opportunity to cross-examine Rodriguez at the preliminary hearing. Thus, there was no error.

Accordingly, in light of the foregoing, the judgment of sentence should be AFFIRMED.

BY THE COURT,

Sandy L.V. Byrd,      J.