J-S77040-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN BROCK, | : | |
| | : | |
| Appellant | : | No. 1111 EDA 2017 |

Appeal from the Judgment of Sentence March 3, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0708871-2003

BEFORE: OTT, J., DUBOW, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED MARCH 21, 2019**

John Brock (Appellant) appeals from the judgment of sentence of 15½ to 31 years of incarceration plus 5 years of probation following his jury conviction of aggravated assault, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, possession of an instrument of crime, and person not to possess a firearm, and his guilty plea to possession with intent to deliver (PWID). We affirm.

We glean the following factual and procedural history from the record. At approximately 5:45 a.m. on June 2, 2003, police responded to a call for a shooting at the home of Valerie Copper, in Philadelphia. Upon arrival, officers encountered Etienne Johnson, who had been shot in the chest. Witnesses at the house described the shooter as a black male, 5'9", and

_____

*Retired Senior Judge assigned to the Superior Court.

wearing a black and orange jacket. This description was broadcast over the police radio.

While driving towards the scene within minutes of the initial call, Officer Timothy Hart observed Appellant a few blocks from the shooting, walking in the opposite direction. Appellant, a black male, was wearing an orange and black hooded sweatshirt underneath a black jacket. Officer Hart made a U-turn and exited his vehicle to approach Appellant. As he did so, Appellant immediately fled on foot. Officers Hart and Michael Shankin pursued Appellant. Officer Shankin ultimately apprehended Appellant and brought him back to his police vehicle to be transported to the hospital for injuries sustained during his flight. Prior to Appellant's being transported, Copper was brought to the area and she identified Appellant as the shooter. A search at the hospital revealed crack cocaine within Appellant's clothing.

Based on the foregoing, Appellant was charged on June 3, 2003, with the shooting and PWID, and was arrested on June 16, 2003. Later ballistics testing matched a recovered projectile from Copper's home to the revolver that Appellant dropped as he ran from police.

> The case was first listed for trial on December 15, 2003, but was continued numerous times until March 8, 2005. On that date, [Appellant], who was on house arrest pursuant to Pa.R.Crim.P. 600(E), failed to appear for court. A bench warrant for his arrest was issued on March 18, 2005[.]
>
> … [Eventually in 2006, after Appellant was incarcerated elsewhere on unrelated charges], the Commonwealth arranged

for [Appellant's] return to Philadelphia to stand trial on the June 3, 2003 charges.

On May 24, 2007, [Appellant's] attorney orally argued that he was entitled to the dismissal of all charges, with prejudice, pursuant to Pa.R.Crim.P. 600[.] … [Following hearings on May 24, 2007, and January 18, 2008,] the trial court granted [Appellant's] motion and dismissed the charges against him.

***Commonwealth v. Brock***, 61 A.3d 1015, 1016 (Pa. 2013) (footnotes omitted).

The Commonwealth appealed, and this Court affirmed the order dismissing Appellant's case. ***Commonwealth v. Brock***, 4 A.3d 678 (Pa. Super. 2010) (unpublished memorandum). However, after granting the Commonwealth's petition for allowance of appeal, our Supreme Court reversed the trial court's order and remanded. ***Brock***, 61 A.3d at 1019-20. The Court concluded that Rule 600 requires a defendant to file a written motion to dismiss, which Appellant had failed to do, and therefore he was not entitled to relief. The Court also determined Appellant had waived his Rule 600 issue because he failed to appear in court on the day listed for trial.[1] ***Id.*** at 1022.

_____

[1] Subsequently, our Supreme Court clarified that this waiver rule "applies only where a defendant fails to appear for a trial that complied with the requirements of Rule 600." ***Commonwealth v. Barbour***, 189 A.3d 944, 960-61 (Pa. 2018). In concluding that its earlier decision in ***Brock*** complied with this narrowed construction, the Court noted that

[a] review of the Superior Court's memorandum in ***Brock***, [] reveals that [Appellant's] original trial date was indeed timely

*(Footnote Continued Next Page)*

- 3 -

Following remand, on May 19, 2014, Appellant filed a motion to suppress the revolver and other physical evidence, and on October 30, 2014, he filed a motion to suppress Copper's identification. Following several continuances, a hearing was held on November 22, 2016. At the hearing, the Commonwealth presented the testimony of Officer Hart and Sergeant Daniel Gorman. Appellant did not call any witnesses, but introduced into evidence the weather report for the morning of June 2, 2003. At the conclusion of the hearing, the trial court denied Appellant's motions. N.T., 11/22/2016, at 50-52.

Meanwhile, on January 26, 2015, Appellant filed a motion to bar ballistics evidence because the revolver and ballistics evidence had been destroyed by the Commonwealth prior to trial. In its response, the Commonwealth asserted that the evidence was destroyed in error, but that it was done in compliance with department policy. Commonwealth's Opposition to Defendant's Motion to Bar Ballistics Evidence, 1/29/2015, at 3. Following a hearing, the trial court denied Appellant's motion because it found that the police did not act in bad faith. N.T., 5/2/2015, at 59.

*(Footnote Continued)* ————————

> under Rule 600—a conclusion with which th[e Supreme] Court took no issue. *See* [*Brock*, 4 A.3d 678 (unpublished memorandum at 10)] (noting that, by the date of Brock's original trial, "252 days chargeable to the Commonwealth had elapsed").

*Barbour*, 189 A.3d at 958.

- 4 -

A jury trial occurred from November 29, 2016 to December 2, 2016, wherein the aforementioned facts were developed. Additionally, because Copper died prior to Appellant's trial, the trial court permitted the introduction of Copper's preliminary hearing testimony, which detailed the events surrounding the shooting, as substantive evidence. *See* N.T., 11/28/2016, at 41-42 (ruling on the Commonwealth's unavailability motion); N.T., 11/29/2016, at 61-72 (reading Copper's redacted preliminary hearing testimony into the record).

At the conclusion of the trial, the jury found Appellant guilty as indicated above. Separately, Appellant pleaded guilty to PWID.[2] On March 3, 2017, the trial court sentenced Appellant to an aggregate term of 15½ to 31 years of incarceration followed by 5 years of probation.

Appellant filed a post-sentence motion, which the trial court denied. This timely-filed appeal followed.[3] Appellant raises 11 issues for this Court's review, which we have rephrased and reordered for clarity and ease of disposition. *See* Appellant's Brief at 14, 32-33, 64-65, 70.

---

[2] During Appellant's trial, he indicated his desire to plead guilty to PWID. *See* N.T., 11/29/2016, at 7. The record does not reflect any guilty plea colloquies or the acceptance by the trial court of Appellant's guilty plea. The voluntariness of Appellant's guilty plea to PWID is not before this Court. Therefore, this deficiency in the record does not hinder our review of Appellant's claims.

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Waived Claims

We dispose of Appellant's first eight claims together, as they are waived for various reasons. Appellant's first claim is that the trial court erred in forcing Appellant to state before the jury that he was pleading guilty to PWID. Appellant's Brief at 14, 28. Specifically, it concerns the beginning of his trial when the court crier asked, in front of the jury, how Appellant wished to plead to each charge. Appellant responded "not guilty" to every charge except PWID, to which he responded, "guilty." N.T., 11/29/2016, at 7. Appellant argues on appeal that the trial court forced him to enter that response in front of the jury. *See* Appellant's Brief at 28. However, no contemporaneous objection was made to the question. It is well-settled that "failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." *Commonwealth v. Thoeun Tha*, 64 A.3d 704, 713 (Pa. Super. 2013) (citations omitted). Moreover, Appellant never moved to have the PWID charge severed for purposes of his jury trial. Therefore, this issue is waived.

Appellant's second claim is that the trial court erred in overruling Appellant's objection to the ballistics expert's stated degree of scientific certainty regarding the conclusions he drew in this case. Appellant's Brief at 14. It is waived because he raises new theories on appeal unrelated to his

cited objection at trial. *See id.* at 31-33;[4] N.T., 11/30/2016, at 82. *See Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003) (citation omitted) ("Also, an appellant may not raise a new theory for an objection made at trial on his appeal.").

Appellant's third claim is that the trial court erred in allowing the Commonwealth to read into the record the dates of Appellant's trial listings. Appellant's Brief at 14. This claim similarly is waived because at trial Appellant only objected to one of the dates being read into the record, whereas on appeal Appellant alleges that the trial court erred in admitting the complete list of trial dates into the record. *Compare* N.T., 12/1/2016, at 79 (objecting to "only one" of the offered dates) *with* Appellant's Brief at 54 (claiming that "[t]he trial court erred in allowing the prosecution to read the dates of Appellant's trial listings into the record."). Because Appellant did not object to the admission of the **list** of trial dates, he has failed to preserve his claim for our review.

Appellant's fourth and fifth claims are that the trial court erred in denying Appellant's motion to suppress Copper's identification as unduly

---

[4] Appellant also argues on appeal that *Commonwealth v. Whitacre*, 878 A.2d 96 (Pa. Super. 2005), which held that the exact methodology used herein was generally accepted in the scientific community, should be overruled based on two articles critiquing forensic science. Appellant's Brief at 33-34. This new argument is also waived for failing to raise it at trial, and insofar as Appellant asks us to overrule a prior panel of this Court, we cannot do that under the circumstances presented here. *See Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006).

suggestive and that the trial court erred in granting the Commonwealth's motion *in limine* to limit cross-examination of the ballistics expert. Appellant's Brief at 14, 64-65. His fourth claim is waived for failing to develop it in any meaningful way in his brief, and his fifth claim is waived because he completely abandons it within his argument, instead focusing on his sixth claim. Appellant's Brief at 64-65, 71. **See Commonwealth v. Delvalle**, 74 A.3d 1081, 1086–87 (Pa. Super. 2013) (some citations omitted) ("Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure provides that '[t]he argument shall ... have ... the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.' Pa.R.A.P. 2119(a). Failure by the appellant to discuss pertinent facts or cite legal authority will result in waiver.").

Appellant's sixth claim, that the trial court erred in not excluding the ballistics expert's report, is waived because Appellant failed to raise it in his Pa.R.A.P. 1925(b) statement. **See** Pa.R.A.P. 1925(b)(2)(iv) ("[A]ny issue not properly included in the [s]tatement timely filed and served pursuant to subdivision (b) shall be deemed waived.").

Appellant's seventh claim, that the trial court erred in denying Appellant's motion to suppress the crack cocaine as fruit of the poisonous tree, is waived by virtue of his guilty plea to PWID. **See Commonwealth v. Heaster**, 171 A.3d 268, 271 (Pa. Super. 2017) (citation omitted) ("[U]pon the entry of a guilty plea, a defendant waives all claims and defenses other

than those sounding in the jurisdiction of the court, the validity of the plea, and what has been termed the 'legality' of the sentence imposed.").

Finally, Appellant's eighth claim, that his constitutional right to a speedy trial was violated, is waived because he failed to raise it before the trial court. "In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Miskovitch*, 64 A.3d 672, 677 (Pa. Super. 2013) (citation and quotation marks omitted). Speedy trial analysis requires a two-step inquiry: "we first consider whether the delay violated Pa.R.Crim.P. 600, and if not, we may proceed to the four-part constitutional analysis set forth in *Barker*[ *v. Wingo*, 407 U.S. 514 (1972)]." *Commonwealth v. Colon*, 87 A.3d 352, 357 (Pa. Super. 2014). However, "[w]here the appellant does not raise the separate constitutional issue apart from the Rule 600 issue as a basis for the motion to dismiss, there is no need for the *Barker* balancing test to be examined." *Id.* at 357 n.2 (citation omitted).

Appellant did not raise a constitutional claim as part of his oral Rule 600 motion. *See Brock*, 61 A.3d at 1022 n.7 (noting that Appellant had not raised a claim regarding his constitutional right to a speedy trial). Following remand, Appellant still did not move for the court to dismiss the charges against him based on his constitutional right to a speedy trial. Instead,

Appellant waited until he filed this appeal to assert such a claim. **_See_** Pa.R.A.P. 1925(b) Statement, 7/15/2017, at ¶ 8 ("Appellant now challenges the issue under his constitutional right to a speedy trial."). Because Appellant failed to raise this claim before the trial court, there is no trial court discretion for us to review, and Appellant's claim fails. **_See Colon_**, 87 A.3d at 357 n.2. Moreover, we note that the trial court had in fact **granted** Appellant's oral rule-based speedy trial motion. It was our Supreme Court that reversed that decision. Insofar as Appellant's claim is really asking this Court to overrule our Supreme Court's holding, that we cannot do.

We now turn to Appellant's claims that were preserved properly.

## Motion to Suppress Revolver

Appellant's ninth claim alleges that the trial court erred in denying his motion to suppress. Appellant's Brief at 64. We review this claim mindful of the following.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression

court properly applied the law to the facts." Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted).

On appeal, Appellant argues that, pursuant to *Commonwealth v. Matos*, 672 A.2d 769 (Pa. 1996), the trial court erred by failing to suppress the revolver because Appellant was subjected to a seizure when the police chased him without probable cause to arrest him or reasonable suspicion to conduct a stop and frisk. Appellant's Brief at 69-70.

In *Matos*, our Supreme Court concluded "that the pursuit of an appellant by police officers amount[s] to a seizure." *In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001) (footnote and citation omitted). "Thus, pursuant to *Matos*, any contraband discarded during the pursuit was abandoned by coercion and the officer must demonstrate either probable cause to make the seizure or reasonable suspicion to stop and frisk." *Commonwealth v. Cook*, 735 A.2d 673, 675 (Pa. 1999) (citation and quotation marks omitted).

> An investigatory stop, which subjects a suspect to a stop and a period of detention but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. Thus, quantity and quality of information are considered when assessing the totality of the circumstances. If information has a low degree of reliability, then more information is required to establish reasonable suspicion.

*Commonwealth v. Wimbush*, 750 A.2d 807, 811 (Pa. 2000) (citations omitted).

At the hearing, the Commonwealth called Officer Hart and Sergeant Gorman to testify regarding their interactions with Appellant. While driving to the scene of the shooting mere minutes after the call for help, Officer Hart looked for an individual matching the description of the shooter broadcast by responding officers. When he was approximately three blocks from Copper's home, Officer Hart observed Appellant walking in the opposite direction. N.T., 11/22/2016, at 7, 9-10, 15-16. Appellant matched the description of the shooter: black male, 5'9", and wearing a black and orange jacket. Specifically, Appellant was wearing a black and orange hooded sweatshirt underneath a black jacket. *Id.* at 10, 21, 23. Officer Hart did not see anyone else in the immediate area as he approached the scene, much less anyone else matching the description of the shooter. *Id.* at 22. Because Appellant matched the description of the shooter and was in close geographic and temporal proximity to, and walking away from, the scene, Officer Hart decided to stop and talk to Appellant. *Id.* at 21.

Officer Hart made a U-turn, exited his vehicle, and asked Appellant to stop, at which point Appellant immediately fled on foot. *Id.* at 11. Officer Hart pursued Appellant in his vehicle and on foot. During the chase, Officer Hart observed Appellant climb a fence, and as he jumped down on the other side a revolver fell off Appellant's person and landed on the ground. *Id.* at

13, 15. Appellant continued to climb over a second fence, which contained barbed wire and razor ribbons, to get to nearby train tracks. In climbing that second fence, Appellant suffered a severe laceration to his face. *Id.* at 12-13, 17, 27, 32. Appellant was ultimately apprehended by another officer and transported to the hospital, where Sergeant Gorman recovered three large chunks of crack cocaine from Appellant's clothing. *Id.* at 27-28.

In denying Appellant's motion to suppress, the trial court concluded that Officer Hart had reasonable suspicion to stop and investigate Appellant based on the totality of the circumstances. Trial Court Opinion, 4/13/2018, at 12; *see also* N.T., 11/22/2016, at 50-52. The totality of the circumstances includes the following. While responding to a shooting within minutes of the initial call, Officer Hart observed an individual who matched the detailed description of the shooter three blocks from the scene and walking in the opposite direction. Additionally, Officer Hart did not observe anyone else in the area at that time. Based upon our review of the record, we agree with the trial court that Officer Hart had reasonable suspicion to stop Appellant and pursue him when he fled. Accordingly, the trial court did not err in denying Appellant's suppression motion.

<u>Preliminary Hearing Testimony of Valerie Copper</u>

Appellant next claims that the trial court erred in granting the Commonwealth's unavailability motion and permitting the Commonwealth to introduce the preliminary hearing testimony of Copper because Appellant did

not have a full and fair opportunity to cross-examine her at the preliminary

hearing.[5]  Appellant's Brief at 19-21.

> Insofar as Appellant's constitutional challenge raises a question
> of law, our standard of review over the trial court's admission of
> the contested testimony is *de novo* and our scope of review is
> plenary.
>
> Our Supreme Court has made clear that the admission at trial of
> previously [recorded] testimony depends upon conformity with
> applicable evidentiary rules and the defendant's constitutional
> right to confront witnesses against him.
>
> Where testimonial evidence is at issue, however, the Sixth
> Amendment demands what the common law required:
> unavailability and a prior opportunity for cross-examination.
> "Whether prior testimony was given at trial or at any other
> proceeding, where, as here, admission of that prior testimony is
> being sought as substantive evidence against the accused, we
> conclude that the standard to be applied is that of *full and fair
> opportunity* to cross-examine." ***Commonwealth v. Bazemore***,
> [] 614 A.2d 684, 687 ([Pa.] 1992) (emphasis in original).

---

[5] Specifically, Copper testified at the preliminary hearing that during the early morning hours of June 2, 2003, she had several friends at her house to play cards.  She heard a knock at the door, and when she went outside to the front porch she observed her friend, Dorothy, with Appellant.  Appellant demanded a $5 refund because Dorothy, whom Appellant had hired as a prostitute to perform oral sex, failed to make him ejaculate.  Copper re-entered her home to look for $5, and Appellant and Dorothy followed her inside.  Copper gave Appellant $5 and told him to leave.  As Appellant left he said, "Oh, I'll be back."

Shortly thereafter, at approximately 5:45 a.m., Appellant returned to Copper's residence, this time brandishing a revolver in his hand.  Appellant began asking the occupants of Copper's residence about Dorothy, yelling repeatedly, "Where the bitch at?"  Copper listened from the kitchen as the other occupants insisted that Dorothy was no longer there.  Appellant responded, "Well I want my money," and shot at Etienne Johnson twice. Copper saw Appellant run out the front door and she called 911.  N.T., 7/24/2003, at 6-18.

> The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary hearing stage as extensively as he might have done at trial.

*Commonwealth v. Mitchell*, 152 A.3d 355, 358–59 (Pa. Super. 2016) (some citations and quotation marks omitted).

There is no question that Copper was deceased and unavailable at the time of Appellant's trial. Thus, the only inquiry before us is whether Appellant had a full and fair opportunity to cross-examine her at the preliminary hearing. Appellant "does not allege that the Commonwealth withheld any statements, criminal record history, or any other concerning factors relevant under the case law." *Id.* at 359. Rather, Appellant presents two arguments to support his contention that he was deprived a full and fair opportunity to cross-examine Copper.

### A.

First, Appellant argues that every defendant's ability to cross-examine a witness at a preliminary hearing "is *per se* impeded by this Court's holding in *Commonwealth v. Ricker*, 120 A.3d 349, 357 (Pa. Super. 2015)[,] in which this Court held that credibility is not an issue at the preliminary hearing[,]" and Pa.R.Crim.P. 542(E), which states that hearsay "'shall be sufficient to establish any element of an offense.'" Appellant's Brief at 24 (quoting Pa.R.Crim.P. 542(E)). Because credibility is an issue at trial but not

at a preliminary hearing, Appellant posits "to allow such preliminary hearing testimony in at trial violates the Confrontation Clause." *Id.* at 25. However, notwithstanding Appellant's displeasure with the *Ricker* decision, under the circumstances here we cannot overrule a prior panel of this Court. *See Pepe*, 897 A.2d at 465. Thus, Appellant's first argument fails.

B.

Second, Appellant argues that the preliminary hearing judge sustained Commonwealth objections during cross examination and overruled Appellant's objection to a question asked by the judge, hindering his ability to fully and fairly cross-examine Copper. Appellant's Brief at 20-21. Our review of the record indicates that there was one instance where Appellant objected to an answer given to the judge's question, and three instances where the judge sustained the Commonwealth's objections on cross examination.

In the first instance, the judge asked Copper during her **direct** examination how she knew that Appellant had fired the weapon, and she responded that he was "the only who asked for the gun." Appellant objected, and the judge did not rule on the objection, but the Commonwealth concluded its direct examination at that time. N.T., 7/24/2003, at 13. The judge's failure to rule on Appellant's objection did not prevent Appellant from attempting to clarify or discredit Copper's statement on **cross** examination. That Appellant chose not to pursue this line of

questioning at all on cross examination does not translate to a deprivation of Appellant's right to a full and fair opportunity to cross-examine.

Second, after asking Copper whether she ran a speakeasy, drank that night, really did "not [have] one sip of alcohol" that night, and whether Johnson had been drinking that night, all of which were answered in the negative, the Commonwealth objected to Appellant asking Copper whether one of the other occupants had been drinking. *Id.* at 14. That objection was sustained. Whether a non-testifying witness had been drinking was irrelevant to Copper's testimony, and the judge did not err in sustaining the objection. Appellant was given a full and fair opportunity to develop whether Copper or Johnson had been drinking that evening/early morning.

Third, after stating that she was familiar with firearms, the Commonwealth objected to Appellant's question regarding how Copper was familiar with firearms. *Id.* at 15. Appellant does not argue on appeal why this testimony should have been admitted, except to state baldly that Appellant was prejudiced by being unable to test her credibility as to how she was familiar with firearms. Appellant's Brief at 25.

Fourth, in asking why Copper did not call the police after the first gunshot, Appellant asked twice whether she called the police and also whether she had a house phone to call the police. Answering in the negative, Appellant then asked if she had a back door that she could walk out, to which the judge sustained an objection because "[s]he said she was

- 17 -

hiding in the kitchen" and therefore was not going to go out any back door if she could. N.T., 7/24/2003, at 16-17. Appellant had exhaustively established that Copper chose to do nothing in response to the first gunshot, whether or not she had the capability to do anything.

None of these sustained objections, nor the single failure to rule on an objection, deprived Appellant of a full and fair opportunity to cross-examine Copper at the preliminary hearing. Accordingly, we conclude that the trial court did not err in admitting her preliminary hearing testimony as substantive evidence at Appellant's trial.

Discretionary Aspects of Sentence

Finally, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 37. Thus, we must first determine whether Appellant has invoked this Court's jurisdiction to review the merits of this claim.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Appellant timely filed a notice of appeal, preserved the claim in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. Thus, he has satisfied the first three requirements. We now turn to consider whether Appellant has presented a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Griffin*, 65 A.3d at 935 (citation and quotation marks omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant presents several arguments.

> [T]he [c]ourt "double-counted" [Appellant's] prior criminal history, failed to adequately state reasons for departing from the guidelines on the record, and more generally, failed to place [Appellant's] conviction into its appropriate context in terms of the seriousness of the offense, need for rehabilitation, and need for protection of the community. The court also heard evidence of [Appellant's] open case which served to inflame the passions of the court.
>
> Ultimately, the sentences on this single [case] were imposed consecutively and the sentence for aggravated assault

exceeded the guideline range by double. These two factors raised the aggregate sentence to an excessive level in light of the criminal conduct at issue.

*Id.* at 38-39.

With regard to Appellant's purported substantial question based on his consecutive sentences, we keep the following in mind.

Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. Thus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case.

*Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (citations and quotation marks omitted).

Here, Appellant entered someone's home, shot an individual point-blank in the chest, and was subsequently apprehended in possession of a large amount of crack cocaine. The trial court sentenced Appellant as follows: aggravated assault, 10 to 20 years of incarceration; carrying a firearm without a license, 3 to 6 years of incarceration; PWID, 2½ to 5 years of incarceration; and possession of firearms prohibited, 5 years of probation. All sentences were set to run consecutively. Appellant's aggregate sentence of 15½ to 31 years of incarceration followed by five years of probation did not raise Appellant's sentence on its face to an excessive level in light of the

criminal conduct at issue here. Thus, we find that Appellant has not raised a substantial question in that regard.

However, Appellant does raise substantial questions by alleging that the trial court did not state its reasons for his aggravated range sentence on the record and by alleging that the court relied on impermissible factors in fashioning his sentence, including double-counting his criminal history. *See Commonwealth v. McNabb*, 819 A.2d 54, 56-57 (Pa. Super. 2003).

Our review of the record does not reveal that the trial court relied on impermissible factors or double-counted any factors in sentencing Appellant. Moreover, the trial court provided its reasoning for imposing the sentences it did. Specifically, before sentencing Appellant, the court stated as follows.

> In fashioning a sentence here today, the [trial c]ourt is taking into account the presentence investigation, mental health report, prior record score, offense gravity score and range, the history and character of [Appellant], his allocution here today, his failure to accept responsibility, and balancing that against his rehabilitative needs as well as the need to protect the public, and the gravity of the offense as it relates, in particular, to the victim in this case; he was shot in the chest. Based on those factors, I'm taking all of them into consideration.

N.T., 3/3/2017, at 16. Accordingly, we conclude that Appellant has failed to demonstrate that the trial court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/21/19